BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
DORIS E. K. WAITE & others.

Norfolk.    November 9, 1931. — January 28, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Trust,* Construction of instrument creating trust. *Devise and Legacy,*
"Heir at law," Per stirpes or per capita.    *Words,* "My heirs at law."

A will made provision for the testator's widow in lieu of her rights in his
   estate, and contained legacies to employees, the widows of deceased
   brothers, a church, a town and certain charities.    All his other prop-
   erty was given to a trustee to be held in as many shares as he had
   children, the income of each child's share to be paid to him or for his
   benefit during his life, with spendthrift provisions, and at such child's
   death the principal of his share to be held "to the use of," and con-
   veyed "in fee and absolutely," to his living children and issue of his
   deceased children, or, if he died without issue, to his brothers and
   sisters (the other children of the testator, if any,) and issue of de-
   ceased brothers and sisters, or, if such child left no issue nor brothers
   nor sisters nor issue of brothers or sisters, "then in trust to hold . . .
   [the share] to the use of and to convey the same to my heirs at law
   in fee and absolutely."    The testator had one child, a son, at the
   time the will was executed, and he never had other children.    The
   son survived the testator and the widow many years and died without
   issue in 1930.    There were then living issue of deceased brothers and
   sisters of the testator, who were of varying degrees of kinship with
   him.    Upon a petition for instructions by the trustee, it was *held*, that
       (1) The will showed an intent on the part of the testator to keep
   the bulk of his property in his family, and, so far as he could, to keep
   it from being wasted through weakness in his children;
       (2) In the circumstances, the words, "my heirs at law," in the pro-
   vision of the will above quoted meant his heirs determined as of the
   date of the son's death, and in accordance with the laws then in force;
       (3) Neither the executor of the will of the testator's widow nor the
   executor of the son's will was entitled to share in the distribution of
   the principal of the trust fund;
       (4) Such fund should be distributed among those persons who were
   the issue of the testator's brothers and sisters on the date of the son's
   death, such issue to take *per stirpes.*

PETITION for instructions, filed in the Probate Court for
the county of Norfolk on October 30, 1930, by the trustee
under the will of Martin L. Hall, late of Brookline.

Material portions of the will, facts agreed upon by the parties and a decree entered by order of *McCoole*, J., are described in the opinion. Certain respondents appealed.

*C. M. Rogerson*, stated the case.

*J. Wiggin*, (*L. B. Phister* with him,) for Irving G. Hall and others.

*J. W. Lowrance*, for Walter P. Hall and others.

*D. M. Hill*, for Louise H. Turner and others.

*H. F. Wood*, for Lewis L. Hall and others.

*C. B. Cross*, for Martha M. Hall, executrix.

WAIT, J. The question before us is the interpretation to be given the words "my heirs at law" in the fifth article of the will of Martin L. Hall. The principle to be followed in answering it is to get at the intent of the testator and to give it effect unless some positive rule of law prevents. *Temple* v. *Russell*, 251 Mass. 231, 235, 236. *Crowell* v. *Chapman*, 257 Mass. 492.

Martin L. Hall executed his will in 1871. His family then consisted of his wife, Josephine S., and an only child, George G. Hall. Although the record does not so state in words, it is apparent that the testator then had no other issue. The will shows that he contemplated that there might be further issue of his marriage. By the law then in force, Gen. Sts. cc. 91 and 94, his heirs at law were the issue of his marriage; and, if no issue remained at the time of his death, his heirs at law would be his living brothers and sisters and the descendants of deceased brothers and sisters by representation. The rights of the widow as a statutory heir need not be stated. They are immaterial here. The same law was in force at his death.

By the fifth article of his will he gave to trustees "such sum of money as shall equal the amount of as many times Seventy Five Thousand Dollars as the number of my children living at the time of my decease," to hold, manage and take care of; to divide into as many shares as there should be living children; to apportion one share to each child; to apply so much of the income of each share as they shall see fit to the education, maintenance and support of the child during its minority accumulating the balance,

and "from the time of his or her attaining the age of twenty-one years to hold the whole of his or her said share and said accumulations . . . to collect and receive the rents and income thereof which shall accrue during his or her natural life and . . . to pay over the remainder thereof to him or her during his or her natural life quarter-yearly upon his or her receipt or order therefor and not by way of anticipation and so a*snot* [*sic*] to be liable for or subject to his or her debts contracts or engagements . . . and at and from the time of his or her decease.  In trust to hold said share . . . to the use of his or her child or children then living . . . [issue of any deceased child to take parent's share by representation] and to convey the same in fee and absolutely accordingly, and if there shall be no such child or issue living at the time of his or her decease, then in trust to hold the same to the use of his or her brothers and sisters then living and the issue then living of any deceased brother or sister of him or her . . . [issue to take by representation] and if there shall be no such child or issue of any such child or brother or sister or issue of any such brother or sister living at the time of his or her decease then in trust to hold the same to the use of and to convey the same to my heirs at law in fee and absolutely."  Each child might in certain circumstances request payment to him or herself of $25,000 from his or her share, which the trustees "if in their judgment it is discreet to trust him or her with the same" might pay over.

By the nineteenth article, the residue of the estate, after payments of debts, legacies and sums as provided by the will and the decease of the widow, was to be similarly divided into as many shares as there were children living at the testator's decease, each share to be held "upon the same trusts for the same purposes and for the use and benefit of the same persons as hereinbefore declared in Article Fifth of this Will," except that provision was made for distribution of portions when the child reached twenty-one and thirty years of age, subject to power in the trustees to retain the fund if in their judgment it was for the best interest of the beneficiary to retain control.

With the exception of gifts to two faithful employees, provision for the widows of two deceased brothers, and donations to a church in Raynham, to the town of Brookline and to four charitable associations for charities, the will gave nothing to any one except his widow, his children, his brothers and sisters and issue of living or dead brothers and sisters. It stated his intention that the provision made for his widow should be in lieu of her claim for dower or thirds in his estate "and all other claims of hers in or to my estate." The intent is manifest to keep the bulk of his property in the Hall family, and, so far as he could, to keep it from being wasted through weakness in his children.

If he intended by the words "my heirs at law" to mean those who would be his heirs at law at the time of his death, then, in all probability, he was giving to his children the remainders in fee after the expiration of the beneficial life estates devised to them, and, in large part, was undoing what he had sought to do by the spendthrift provisions of his will. This remainder, on that assumption, could vest in possession in any person other than a representative of a child of his only if he survived the longest liver among his children and all the issue of his deceased children. If, however, he meant by those words those who would be his heirs at law if he were to die immediately after the holder of the life estate, then his spendthrift provisions would have full effect, and his brothers and sisters or their issue would probably take the remainder. We think the latter was his intention. No power of disposition by will over the remainder was given to any child. After the death of the life tenant, the trustees were to hold to the use of "my heirs at law," and thereafter to convey. It is improbable that it was intended to direct the trustees to hold to the use of a dead man; yet no other meaning is possible if the life tenant was the heir at law contemplated. We think an intention appears from the will that no child of the testator shall have an interest as his heir at law in this remainder.

The testator died in 1875, leaving his widow and his son George G. Hall surviving. He had had no other child.

The widow accepted the provision for her made by the will and claimed nothing else from the estate. The funds under the fifth and nineteenth articles of the will were set aside. The widow died, testate, in 1897. George G. Hall received the income and some portions of the principal of the trust fund during his life, and died, testate, leaving no issue, in 1930.

The trustee filed its petition for instructions setting out that claims for the funds were made by George's widow as executrix of his will; by claimants under the will of Josephine S. Hall, widow of Martin L. Hall; by descendants of brothers and sisters of Martin L. Hall claiming as heirs at law of the testator ascertained at the death of George G. Hall but of a class created at the death of the testator; by descendants of the testator's brothers and sisters claiming as heirs at law of the testator ascertained at the death of George G. Hall and being issue of such brothers and sisters; and by descendants of the testator's brothers and sisters claiming as heirs at law of the testator ascertained at the death of George G. Hall and being children of such brothers and sisters. The judge of probate held that the executrix of the will of George G. Hall was entitled to the funds, and instructed accordingly. The other claimants appeal.

All parties concede that, ordinarily, the words "my heirs at law" when used by a testator to indicate donees mean those persons who take an estate of inheritance in his estate at his death. *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580. The judge gave them that meaning here. As was stated in the case just cited at page 583: "Nevertheless the aim in every case involving the interpretation of wills is to ascertain the intent of the testator from the whole instrument and then to give effect to that intent unless prevented by some positive rule of law. Therefore, if the word 'heirs' is used clearly in some sense different from its correct meaning, or as indicating some restriction upon that class, that meaning will be given effect." Rules of construction have their binding effect only where the language of the will does not make the testator's intent clear. In the case before us, as has already

been stated, a clear intention appears to use the words to indicate heirs to be ascertained as if the testator had died immediately after George G. Hall. It is distinguishable from the late cases of *Gilman* v. *Congregational Home Missionary Society*, just cited, *Old Colony Trust Co.* v. *Sullivan*, 268 Mass. 318, *Thompson* v. *Clarke*, 264 Mass. 56, and *Ball* v. *Hopkins*, 254 Mass. 347. In none of those cases were there such indications of the testator's meaning in the language of the will or the scheme of distribution of the property as appear here. This case more nearly approaches cases like *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, *Welch* v. *Howard*, 227 Mass. 242, and *Heard* v. *Read*, 169 Mass. 216, 223. There was no such indication of willingness to let the law determine the ultimate donees as in *Crowell* v. *Chapman*, 257 Mass. 492.

We think there was error in the decree. The heirs at law of the testator who are to take are descendants of his brothers and sisters. George G. Hall was not such an heir. His executrix does not take. The intent to exclude the widow from such "heirs" is manifest from the twenty-seventh article of the will, already quoted in part, which confined her interest to the specific provision made for her. The testator cannot have thought of her as an "heir." Those claiming under her will cannot take.

We see nothing to establish a contention that a class fixed at the death of the testator was in his mind as the heirs at law to be determined at the time the gift of the remainder took effect in possession. Where such a gift is made, the heirs are held to be those who would be heirs according to the law in force at that time and not that in force at the time of the testator's death, unless a different intention is clear from the will. *Lincoln* v. *Perry*, 149 Mass. 368. Consequently the contentions of those descendants of the testator's brothers and sisters must fail who argue for a distribution other than would follow had Martin L. Hall died immediately after his son, in accord with the statutes then in effect, which provided for distribution among "issue" *per stirpes*, where, as here, all are not in the same degree of kinship.

We understand no argument is made that the decree was erroneous in refusing to direct payment of bills of the estate of George G. Hall. It must be reversed, however, and instruction given that the will properly construed directs distribution to the heirs at law of Martin L. Hall determined as of the date of the death of George G. Hall, and they are those persons who are the issue of the testator's brothers and sisters determined as of the date of the death of George G. Hall. Costs as between counsel and client may be determined by the judge of probate, and may be ordered paid from the funds of the trust in his discretion.

*Ordered accordingly.*