WORCESTER COUNTY TRUST COMPANY, trustee, *vs.* FRANK M. MARBLE, executor, & others.

Worcester.    September 27, 1943. — June 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Devise and Legacy,* Heirs at law. *Probate Court,* Costs.

A will, wherein various interests in the income of a trust fund were given to the nearest relatives of the testator and to one who was not a relative and it was provided that upon the death of the survivor of all of them the principal was to be divided "among those people who would be entitled to share in my estate under the laws of this Commonwealth," construed in its entirety in the light of circumstances known to the testator when it was executed, disclosed an intention not to make provision for the income beneficiaries beyond their interests therein and that the persons taking the principal should be determined as of the time of the termination of the trust rather than as of the time of the testator's death.

The authority conferred by G. L. (Ter. Ed.) c. 215, § 45, cannot be delegated; and consequently a decree by a Probate Court on a petition for instructions by a trustee directing him to "pay reasonable legal expenses of the parties respondent" was ordered modified by substituting therefor allowances, in amounts fixed by the judge himself, to the respondents who appeared in the Probate Court or to their counsel for costs and expenses.

PETITION for instructions, filed in the Probate Court for the county of Worcester on September 8, 1942.

The case was heard by *Wahlstrom, J.*

In this court the case was argued at the bar in September, 1943, before *Field,* C.J., *Donahue, Qua,* & *Dolan,* JJ., and after the retirement of *Donahue* & *Cox,* JJ., was submitted on briefs to *Lummus, Ronan, Wilkins,* & *Spalding,* JJ.

*B. Gilman,* stated the case.

*H. H. Hartwell, (J. F. Driscoll* with him,) for Horne, administrator.

*R. S. Bowditch,* for Tower and others.

*R. W. Meserve,* for Tate and others.

DOLAN, J.   This is an appeal from a decree entered upon the petition of the trustee under the will of George Tower instructing the petitioner that the residuary trust estate held by it under the will should be distributed "to those persons who would have been the next of kin and heirs at law of . . . [the testator] had he died on April 16, 1942." That was the date of the termination of the trust.   Herbert E. Horne, as administrator of two estates, appealed and requested the judge to report the material facts found by him.   In response the judge reported that the material facts are contained in the pleadings; that "No evidence of any kind was offered," but that before the case was argued the attorney for the petitioner stated that Mary Dexter Tower, the only surviving sister of the testator, was eighty-four years of age at the time of his death; that this statement was not disputed; and that if he had the right and the power he found this statement to be a fact.   Since all of the parties who have been represented in argument in this court have treated this statement as if actually in evidence as a fact, we deal with the case on that basis.

The facts set forth in the petition which were not denied may be summed up so far as material as follows: The testator died on December 15, 1901.   His will was allowed on December 31, 1901.   The trustees named therein having declined to serve, the petitioner was appointed and duly qualified as trustee under the name of Worcester Safe Deposit and Trust Company.

Under "Item Eight" of the will the testator devised and bequeathed the residue of his estate to his "Executors" in trust, to pay the income as it should become due to his sisters Sally Remington Tower and Mary Dexter Tower (the widow of Isaac Wilson Tower), and to his niece Mary Ann Tower, daughter of his brother Isaac, "in even and equal portions, One Third to each during their joint lives," and upon the death of any of them, to pay over the income to the survivors equally so long as there should remain two survivors. The testator further provided as follows: "4. When there shall be but one survivor of the persons aforesaid, entitled, to said income as hereinbefore provided, then to pay over and distribute one half part of said income to and among all my nephews and nieces and . . . Lewis Hodgkins, equally, the child or children of any deceased nephew or niece or of the said Lewis Hodgkins, to take the portion which would have belonged to the said nephew or niece or said Lewis Hodgkins, by right of representation; and to continue thereafter to pay over the income accruing on the other half of said principal sum to such survivor, during her life. 5. At the decease of the survivor referred to in section 4, to pay over the income to my said nephews and nieces and the said Lewis Hodgkins, share and share alike, the child or children of any deceased nephew or niece or of the said Lewis Hodgkins, to take by right of representation. 6. Upon the decease of the last of my nephews or nieces or the said Lewis Hodgkins, to divide the unexpended balance in their hands, among those people who would be entitled to share in my estate under the laws of this Commonwealth." The testator was survived by his sister Mary Dexter Tower, who was then eighty-four years of age, by the issue of six deceased brothers and sisters, including Mary A. Tower, a daughter of his brother Isaac, and by Lewis Hodgkins who does not appear to have been related to the testator. The testator's sister Sally predeceased him. Lewis Hodgkins died on April 16, 1942, having survived the testator's sister Mary, who had died unmarried on July 19, 1906, as well as all of the testator's nephews and nieces. The niece Mary A. Tower survived the testator but died on May 8,

1907. The appellant is the administrator of the estate of Frances P. Horne, who died December 7, 1917, and of the estate of Adelbert O. Horne.

The decisive question is whether "those people who would be entitled to share in  . . . [the estate of the testator] under the laws of this Commonwealth" are to be determined as of the date of the death of the testator (December 15, 1901) or as of the date of the termination of the trust, as decreed by the judge.

Properly construed, the gift in question was to those persons who would be the heirs of the testator under the laws of this Commonwealth, that is, under the statute of distribution. It is the general rule that the heirs of a testator are to be determined as of the date of his death unless a contrary intent clearly appears from his will. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531. In the case last cited, many decisions of this court are referred to where the gifts were construed to be to the heirs of the testator as of the date of his death. But, as was pointed out in that case, the general rule, one of interpretation and not a positive rule of law, will yield where its application would have the effect of defeating the intent of the testator (pages 532–533). See also *White* v. *Underwood,* 215 Mass. 299, 300; *Waverly Trust Co., petitioner,* 268 Mass. 181, 183–184, and cases cited. All rules of construction must yield to the cardinal rule for the interpretation of wills, to the effect that the intent of the testator is to be ascertained from a study of the will as a whole in the light of the circumstances known to the testator at the time of the execution of the will, and that when so ascertained it shall be given effect unless some positive rule of law prevents. *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 248–249. *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 259, and cases cited. *Agricultural National Bank* v. *Miller, ante,* 288. Applying this rule to the present case, we are of opinion that the testator intended that the persons who were named to take should be determined as of the date of the termination of the trust and not as of the date of his death. Under the terms of the will the testator first pro-

vided that the income from the trust of the residue should be paid to his sister Sally who predeceased him, to his sister Mary who survived him, and to his niece Mary Ann Tower (who survived him), the daughter of his deceased brother Isaac, directing that the income should be paid to them in equal shares, and upon the death of one to the survivors, until there should be only one survivor. These provisions became effective upon the testator's death only as to the testator's sister Mary and his niece Mary A. Tower. Upon the death of either no interest in the income of the trust estate was reserved to her estate; on the contrary, the testator provided that when there should be but one survivor the trustees should distribute one half part of the income to and among all his nephews and nieces and Lewis Hodgkins equally, "the child or children of any deceased nephew or niece or of the said LEWIS HODGKINS, to take the portion which would have belonged to the said nephew or niece or said LEWIS HODGKINS, by right of representation; and to continue thereafter to pay over the income accruing on the other half of said principal sum to such survivor, during her life." And upon the death of the survivor he reserved no interest in the income to her estate, but provided that all the income should then be paid to his nephews and nieces and Hodgkins, share and share alike, "the child or children of any deceased nephew or niece or of the said LEWIS HODGKINS, to take by right of representation." And in this situation he reserved no interest in the income of the trust to the estate of any nephew or niece who should die, but substituted for any nephew or niece upon his or her death his or her child or children, thus indicating that he had the children of his nephews and nieces in his mind and that in the event of the death of any of the latter it was his intention that his or her child or children should stand in his or her place by right of representation. He must be taken to have known that under the terms of the trust it would not terminate until the death of all his nephews and nieces and of Hodgkins, and that in their lifetime they could never enter into possession and enjoyment of any interest in the

remainder.  While that is not conclusive (see *Ball* v. *Hopkins*, 254 Mass. 347, 350), it is nevertheless a "circumstance to be weighed with all relevant factors in ascertaining the testamentary design." *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 584.

The ultimate direction for distribution in the present case is phrased in the future tense.  That is not conclusive, but is also a fact to be considered.  Unlike the language used in many other cases referred to in *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, the language used in the present case is not that of a present gift.  The language is not that construed in the recent case of *National Shawmut Bank* v. *Joy*, 315 Mass. 457, where the grantor in a deed of trust provided for the payment of income for the benefit of certain persons, with a power of appointment to one, and provided in default of appointment that the trust estate should be paid over "to such person or persons as are entitled to take from the donor . . . under the laws of intestacy of the Commonwealth of Massachusetts" (page 461), and where it was held that those to take were to be determined as of the date of death of the donor.  In the present case, the gift is not to those who "are" the testator's heirs but to those who, upon the death of all his nephews and nieces and Hodgkins, "would be" entitled to share in his estate under the laws of the Commonwealth, that is, his heirs as fixed by the statute of distribution.  See *White* v. *Underwood*, 215 Mass. 299; *Old Colony Trust Co.* v. *Lothrop*, 276 Mass. 496, 500; *Boston Safe Deposit & Trust Co.* v. *Waite*, 278 Mass. 244, 248–249, and cases cited.  But even in cases where the phraseology used was that of a gift after life interests in the present tense, such as to those who are entitled, it has been held that the heirs were not to be determined as of the date of death of the testator because a contrary intent was shown by the will.  In *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 533, the court said with citation of authorities, "Where the will has provided for a person in his lifetime who would be an heir if the heirs should be determined as of the time of the death of the testator, and shows that no further

provision was intended for that person, that has been held sufficient to indicate that the heirs were to be determined as of a later time when he would no longer be an heir." But that intent must be shown by the will read in the light of the circumstances attendant upon its execution. See *Brown* v. *Spring*, 241 Mass. 565; *Barker* v. *Monks*, 315 Mass. 620, 625, and cases cited. In the present case we are of opinion that the will read in the light of the attendant circumstances shows that no further provision was intended to be made for his sister and his nephews and nieces and for Hodgkins other than that made for them during their respective lives.

The will was executed about two years before the death of the testator. He must be taken to have known that his sister Mary was then about eighty-two years of age and was unmarried and had no issue, that all his other brothers and sisters, except his sister Sally Remington Tower, had deceased, and that there was no possibility that through the deceased brothers and sisters there could be any nephews and nieces other than those living when the testator executed the will. The testator's sister Sally left no issue. By fixing the time for the termination of the trust as that of the death of all his nephews and nieces and Hodgkins, he obviously had in mind that his sister Sally had no issue and that his sister Mary was of such an advanced age that in all human probability she would not survive all of his numerous nephews and nieces. That would be true also as to his sister Sally who in fact predeceased the testator. And Mary died almost thirty-six years before the trust terminated, and the testator's niece Mary A. Tower died about thirty-five years before the trust terminated. As of the time of his death they were favored beneficiaries. In these circumstances, considered with those already before recited, we are of opinion that the testator was providing for his sisters and for the nephews and nieces living at his death and for their lives only. This being so, the interests of his sister Mary and of the nephews and nieces who survived him fully vested in persons in being at the time of his death, and since the trust was to and did terminate upon the death of the last

survivor of the nephews and nieces who survived the testator and of Hodgkins, who also was in being when the testator died, no question of violation of the rule against perpetuities is presented.

The decree entered by the judge must be modified by striking out the direction to the trustees to "pay reasonable legal expenses of the parties respondent" and by substituting therefor allowances in amounts fixed by the judge himself to the respondents who appeared in the proceedings in the court below or to their counsel for costs and expenses, as provided in G. L. (Ter. Ed.) c. 215, § 45. The authority conferred by the statute upon the judge cannot be delegated. As so modified the decree entered by the judge is affirmed. Costs and expenses of this appeal may be allowed to respondents who have participated therein or to their counsel in the discretion of the Probate Court.

*Ordered accordingly.*