JOHN A. PERKINS, trustee, *vs.* THE NEW ENGLAND TRUST COMPANY, executor and trustee, & others.

Suffolk. February 7, 1962. — May 8, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Devise and Legacy,* Heirs at law, Adopted child, Spendthrift clause, Accrued and accumulated income of trust. *Adoption. Statute,* Retroactive statute. *Assignment. Trust,* Accrued and accumulated income. *Words,* "Child."

Under a will directing that money left in trust be divided into equal shares and the income from each share be paid to a child of the testator for life, and that upon the child's death the share be held to the use of the deceased child's children and be paid to such children upon reaching twenty-one, but that in case of the death of the child of the testator without issue his share be paid to the testator's "heirs at law," the heirs at law should be determined as of the testator's death in accordance with the general rule rather than as of the death of the child of his without issue [289, 291]; it was without significance that under such determination the life beneficiaries, children of the testator, also took remainder interests as heirs of his, that although their life interests were subjected to spendthrift provisions their remainder interests would not be subject thereto, and that there were no words of present gift to the heirs in the will and the heirs' remainder interests were contingent. [291–292]

St. 1958, c. 121, §§ 1, 2, amending G. L. c. 210, § 8, and making amended § 8 applicable "only to grants, trust settlements, entails, devises or bequests executed after the effective date of" c. 121, had a prospective effect only and did not repeal prior statutes setting forth rules for construction of instruments respecting the rights of adopted children, and the prior statutes continued in force for all instruments executed before such effective date. [292–294]

Under a will giving a life interest in a share of the testator's residuary estate to his son and giving the share on the son's death "to the use of

. . . [his] child or children then living" and containing no indication that the testator had any intent respecting inheritance rights if his son adopted a child, a daughter adopted by the testator's son after the execution of the will did not take the son's share as his "child" upon his death where her rights under the will were governed by G. L. c. 210, § 8, as it read before its amendment by St. 1958, c. 121, § 1.   [292–294]

Where a will directed that the share of each of the testator's children in the principal of a testamentary trust be transferred by the trustee to a life insurance company for payment of the interest earned by the share to the child during his life and for return of the share upon his death to the trustee for the benefit of the child's issue or, in case the child died without issue, for transfer to the testator's heirs, a spendthrift provision in the document issued by the life insurance company to each child, even if it applied to his life interest, would not prevent him from alienating the contingent remainder interest in the shares acquired by him under the will as an heir of the testator.   [294–295]

Provisions of a will, that upon the death of the life beneficiary of a trust "the amount of the principal sum . . . and the accumulations thereto . . . and all interest due thereon at the time of said death" should be paid over, in an event which occurred, for the benefit of the testator's heirs, required payment to the heirs of interest which had accrued at the time of the death of the life beneficiary and was payable thereafter; G. L. c. 197, § 27, was not applicable and the estate of the life beneficiary was not entitled to apportionment.   [295–296]

PETITION filed in the Probate Court for the county of Suffolk on August 26, 1960.

The case was heard by *Wilson, J.*

*John A. Perkins,* stated the case.

*Richard Wait,* for the respondents Harvey H. Bundy, executor and another.

*John E. Rogerson,* for the respondents Edith Bremer Faxon and others.

*Augustus W. Soule, Jr.,* for the respondent The New England Trust Company, executor and trustee.

SPALDING, J.   This is a petition for instructions by the trustee under the will of John L. Bremer.

John L. Bremer died in 1896 survived by a widow, two sons (S. Parker Bremer and J. Lewis Bremer), and a daughter, Sarah. The widow died in 1916. S. Parker was the first of John's children to die; he died testate in 1925, survived by three daughters, Edith Bremer Faxon, Ruth Bremer Baker, and Mabel Bremer Baker. Sarah, a spinster, died on July 6, 1958. In 1905 she had established a

trust to which she had conveyed all her interest under her
father's will.[1]  The survivor of the testator's children,
J. Lewis, died testate and without blood issue on December
25, 1959.  He was survived by an adopted daughter, Bar-
bara Kinne.

The controversy arises out of the sixth article of John L.
Bremer's will, which provides, in part, as follows: $300,000
of the residuary estate is to be divided into equal shares
for the testator's living children and the issue of any de-
ceased child.  The share allotted to each living child is to
be converted into money and paid to The Massachusetts
Hospital Life Insurance Company (Hospital Life) in trust,
the declaration of trust "to be, as nearly as practicable, the
form commonly used by said Company in like cases."  The
interest earned by the share so held is to be paid to the child
during his life, and upon his death the principal of the
share, together with accumulations and accrued interest, is
to be transferred and paid to the trustees under the testa-
tor's will.  When the trustees receive back the principal,
they are to hold "to the use of . . . [the annuitant's] child
or children then living and the issue then living of any
deceased child of . . . [the annuitant] share and share
alike," and to pay it to each as he reaches twenty-one.
"[B]ut if at the time of the decease of any child of mine
there shall be no issue of him or her living then in trust to
hold this trust property to the use of my heirs at law and
to convey the same in fee."  The will contained no spend-
thrift provision.

The $300,000 was paid over to Hospital Life and it is-
sued three documents, each entitled "Annuity in Trust."[2]
We are concerned only with the annuities for Sarah and
J. Lewis; S. Parker's annuity is not involved since he
died leaving issue.  The certificates relating to Sarah and

[1] Certain clauses of this trust, not here relevant, were recently before this
court in New England Trust Co. v. Faxon, 343 Mass. 273.

[2] In 1949 Hospital Life was reorganized under a decree of this court and
trust certificates were issued in substitution for the annuities in trust.  The
language of the new certificates differs slightly from that of the annuities but
the differences are not material here.

J. Lewis, except in certain respects not here material, were identical. Each provided that Hospital Life would pay interest quarterly to the annuitant for life. Each certificate also provided: "The rights to demand and receive this Annuity, and the Principal Sum, are both hereby declared to be inalienable by the parties respectively entitled thereto, and not subject to their debts or control, or to the claim of any creditor." The questions presented in the court below and here are these: 1. Did the testator intend his "heirs at law," as those words are used in the sixth article of his will, to be determined as of his death, or as of the deaths of his children respectively? 2. Is J. Lewis Bremer's adopted daughter, Barbara Kinne, a "child," as that word is used in the will? 3. Did Sarah F. Bremer effectively assign her interest as an heir of the testator to the trust created by her in 1905? 4. Is certain accrued income payable to the "heirs at law" of John L. Bremer or to the estates of the deceased life beneficiaries?

The judge below entered a decree providing that the funds from both certificates (including all accumulated interest) should be paid in equal thirds to the executor of S. Parker Bremer, to the trustee of Sarah's 1905 trust, and to the executor of J. Lewis Bremer. The effect of this decree is that the testator's heirs are to be determined as of the date of his death and that his widow is not one of the heirs;[3] that Barbara Kinne was not entitled to take as a "child" of J. Lewis Bremer; and that the estates of Sarah and J. Lewis Bremer were not entitled to accrued income.

An appeal was taken by the three daughters of S. Parker Bremer who would have taken one half of Sarah's certificate and all of J. Lewis's (if Barbara Kinne was not entitled to it) if the heirs had been determined at the respective dates of distribution. Barbara Kinne, claiming all of J. Lewis's certificate, appealed. And J. Lewis's executor, whose claim for accrued income had been denied, likewise appealed.

---

[3] The correctness of the decree in excluding the widow is not presented by the appeals.

1.  The judge properly ruled that the testator's heirs at law are to be determined as of his death rather than as of the deaths of the life beneficiaries, Sarah F. Bremer and J. Lewis Bremer.  The applicable rule was stated by Chief Justice Shaw: "[W]hen a bequest is made to one or more for life, and remainder to the testator's heirs, or next of kin, . . . the bequest is to those who are such heirs or next of kin at the time of his decease, unless there are words indicating a clear intention that it shall go to those who may be his relations or next of kin at the time of the happening of the contingency upon which the estate is to be distributed." *Childs* v. *Russell,* 11 Met. 16, 23.  It is unnecessary to cite the long line of cases in which this rule has been applied. See *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, where many of the cases are collected at page 531.

The respondents Edith Bremer Faxon, Mabel Bremer Baker, and Ruth Bremer Baker contend that for various reasons this case does not fall within the general rule. They point out that the life beneficiaries would be heirs if the date of the testator's death is controlling.  But it has often been stated that "there is no such incongruity in a beneficiary having a life interest being also a vested remainderman as necessarily to prevent the word 'heirs' [from] carrying its usual meaning."  *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 21.  *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531, and cases cited.  *Hendrick* v. *Mitchell,* 320 Mass. 155, 161.  *New England Trust Co.* v. *Watson,* 330 Mass. 265, 268.  This is especially true where there is a gift, as there is here, to the life beneficiary's issue, the heirs to take only in the event that the life beneficiary dies without issue.  See Restatement: Property, § 308, comment k.

It is urged that the fact that the life beneficiaries' interests were subject to spendthrift provisions[4] is incompatible

---

[4] These spendthrift provisions are found not in the testator's will, but in the trust certificates of Hospital Life.  The testator directed in his will that the "Declaration of Trust to be signed by said Company . . . is to be, as nearly as practicable, the form commonly used by said Company in like cases."  We assume, without deciding, that the spendthrift provisions are entitled to as much weight as if they appeared in the will itself.

with an intent by the testator that his children take as heirs, thereby enabling them to alienate the property and making it reachable by their creditors.  See *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247; *Thompson* v. *Bray,* 313 Mass. 717, 722; *Taylor* v. *Albree,* 317 Mass. 57, 63.  But we are unable to say, viewing this will as a whole, that a remainder interest in the children as heirs constitutes "undoing what [the testator] had sought to do by the spendthrift provisions of his will," as was the case in *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247.  See *Rotch* v. *Rotch,* 173 Mass. 125, 132; *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 21–22.  There was not here, as in the *Waite* case, a manifest intent to keep the property "from being wasted through weakness in his children."  P. 247.  The mere utilization of the commonplace spendthrift clause is not sufficient evidence of such an intent.  Furthermore, the applicability of the *Waite* case to the case at bar is considerably weakened by the fact that, even if the testator intended his heirs to be determined as of the deaths of the life beneficiaries, the surviving children would still come into possession of the share of a deceased child (assuming that the widow would predecease all three, a most probable result), free to dissipate the proceeds as they saw fit.  The spendthrift provisions, therefore, are of little aid, in the circumstances of this case, in arriving at the testator's intent.

Finally, it is suggested that the absence of words of present gift to the heirs, coupled with the fact that the heirs' interest is contingent (since they take only on the death of a child without issue), indicates that the use of the word "heirs" was not intended in its usual sense.  But both of these factors have been present in several of our decisions and have not been deemed sufficient to take the case out of the general rule.  See *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528; *Bagley* v. *Kuhn,* 322 Mass. 372.

2.   Barbara Kinne, the adopted daughter of J. Lewis Bremer, asserts that she is his "child" so as to take under the provision of the will which gives him a life interest

under the Hospital Life certificate, following which the property is to go "to the use of his . . . child or children then living."

We shall not indulge in the fiction that we are seeking to determine whether the testator *intended* adopted children to take under the quoted language. There is no indication that the testator had any intent in this situation. The Legislature has, since 1876, set out in what circumstances an adopted child may take under a will which uses "the term 'child,' or its equivalent" where the testator fails to make clear his intent. Statute 1876, c. 213, § 9, continued in effect until August, 1958, with no material changes.[5] In its latest form, prior to the 1958 amendment, it provided: "The word 'child,' or its equivalent, in a . . . bequest shall include a child adopted by the . . . testator, unless the contrary plainly appears by the terms of the instrument; but if the . . . testator is not himself the adopting parent, the child by adoption shall not have, under such instrument, the rights of a child born in lawful wedlock to the adopting parent, unless it plainly appears to have been the intention of the . . . testator to include an adopted child."

In 1958, G. L. (Ter. Ed.) c. 210, § 8, was amended by St. 1958, c. 121, which reads as follows: "Section 1. Chapter 210 of the General Laws is hereby amended by striking out section 8, as appearing in the Tercentenary Edition, and inserting in place thereof the following section: — Section 8. The word 'child,' or its equivalent, in a grant, trust settlement, entail, devise or bequest shall include an adopted child to the same extent as if born to the adopting parent or parents in lawful wedlock unless the contrary plainly appears by the terms of the instrument. Section 2. The provisions of section eight of chapter two hundred and ten of the General Laws, as amended by section one of this act, shall be applicable only to grants, trust settlements, entails, devises or bequests executed after the effective date of this act. Section 3. This act shall take effect six months after its passage. Approved February 26, 1958."

---

[5] See Pub. Sts. c. 148, § 8; R. L. c. 154, § 8; G. L. (Ter. Ed.) c. 210, § 8.

The problem is one of determining which statute applies. If the pre-1958 statutory law is applicable, the result is clear that Barbara Kinne cannot take under the will, for the testator was not her adopting parent. We assume, as Barbara Kinne suggests in her brief, that in the circumstances here obtaining, when the adoption is subsequent to the execution of the will, the law in force at the time distribution is to be made to the "child" is controlling. *Gilliam* v. *Guaranty Trust Co.* 186 N. Y. 127, 133. See *Blodgett* v. *Stowell,* 189 Mass. 142; *Sherburne* v. *Howland,* 239 Mass. 439, 442. This would fix the controlling date as December 25, 1959, the date of J. Lewis Bremer's death. But even on this assumption the result would not be different. Statute 1958, c. 121, § 2, is explicit in providing that the amendment to G. L. c. 210, § 8, "shall be applicable only to grants, trust settlements, entails, devises or bequests *executed* after the effective date of this act" (emphasis supplied). Accordingly, the amendment can be of no aid to Barbara Kinne. It is argued on her behalf that the 1958 amending statute repeals all prior statutory provisions which set forth a rule of construction for adopted children taking under wills, leaving pre-1958 instruments to be interpreted without the benefit of any statutory rule of construction. Under such a view (having in mind the similarity of G. L. c. 210, § 6, to Gen. Sts. c. 110, § 7), Barbara Kinne would doubtless be regarded as a "child." *Sewall* v. *Roberts,* 115 Mass. 262, 276. We cannot accept this contention. By restricting the application of the amendment to instruments executed after the effective date of the statute (August 26, 1958), the Legislature has clearly manifested an intent that the statute is to have prospective effect only, with no suggestion of an intent to repeal prior law. We are of opinion that the prior law continues in force for all instruments executed prior to August 26, 1958. See *Ostertag* v. *Cahalin,* 343 Mass. 523. Thus, using the statutory rule of construction in effect on December 25, 1959, Barbara Kinne cannot take as a "child" under the terms of John L. Bremer's will.

3. In view of our holding that John L. Bremer's "heirs" are to be determined as of the date of his death, the ques-

tion arises whether Sarah F. Bremer effectively assigned her contingent interests[6] as heir by her 1905 indenture of trust. In this trust it was stated: "That whereas the said Sarah has certain reversionary rights and interests in the principal of certain trust funds now held by trustees under the will of John L. Bremer . . . . Now therefore this Indenture witnesseth that . . . the said Sarah doth hereby . . . convey . . . [to trustees] all her right, title, interest, claim and estate whether in possession, remainder, reversion or otherwise in and to all the aforesaid real and personal property . . . and estate of every kind now held or which may at any time hereafter be held in trust as aforesaid under the said will."

We have no doubt that these interests were capable of being assigned, even though contingent. See *Clarke* v. *Fay,* 205 Mass. 228; Restatement: Property, § 163. However, the respondents Edith Bremer Faxon, Mabel Bremer Baker, and Ruth Bremer Baker challenge the assignment to the trust on the ground that the spendthrift clauses contained in the Hospital Life certificates prevent alienation of Sarah's interests as heir. This contention need not detain us long. While these spendthrift provisions were presumably effective to prevent alienation by the testator's children of their income interests, we are of opinion that they were not intended to prohibit alienation of the ultimate remainders to heirs, which were to become vested only in the event that the lines of primary trust beneficiaries ran out. See *Huntress* v. *Allen,* 195 Mass. 226, 233–234.

4. A subsidiary question has been raised as to whether the interest which had accrued on the trust certificates at the time of the deaths of Sarah F. Bremer and J. Lewis Bremer is payable to the estates of the deceased annuitants or to the "heirs at law" of John L. Bremer.[7] The will

---

[6] We assume that these were interests in personalty and not realty, since the contrary has not been brought to our attention, although Hospital Life is authorized by the will to pay over to the testator's trustees "in money, or in real estate stocks, notes, bonds, mortgages or other property belonging to said Company."

[7] Sarah F. Bremer died on July 6, 1958, and the next interest payment under her certificate fell due on October 1, 1958. J. Lewis Bremer died on December 25, 1959, and the next interest payment under his certificate fell due on January 1, 1960.

provides that upon the death of the annuitants Hospital
Life is to pay to the testator's trustees "the amount of the
principal sum . . . and the accumulations thereto . . . and
all interest due thereon at the time of said death . . . ."
The "property so assigned, transferred and paid over" to
the trustees is to be conveyed by them, in the event that an
annuitant dies without issue, to the testator's "heirs at
law." In view of the fact that the will explicitly provides
for the disposition of the accrued income, G. L. c. 197, § 27,
by its terms, is not applicable, and the sums in question are
payable to the "heirs at law" of John L. Bremer.

5. The decree is affirmed. Costs and expenses of the
appeals are to be in the discretion of the Probate Court.

*So ordered.*