THE FIRST SAFE DEPOSIT NATIONAL BANK OF NEW BEDFORD & another, trustees, *vs.* ROSE F. WESTGATE & others.

Bristol.    October 8, 1963. — November 8, 1963.

Present: WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Devise and Legacy,* Next of kin, Remainder.    *Words,* "Next of kin."

Under a will establishing a trust to pay the income to the testator's widow for life or until remarriage, to pay certain comparatively small sums of principal to the testator's son, his only child, at various ages, to pay the income, after the widow's death or remarriage, to the son for his ·life and thereafter to his issue for a stated period, and at the end of such

period to pay the principal "then" remaining to the son's issue, or, in default of issue of the son at his death, to pay the principal "then" remaining to the testator's "next of kin, according to the laws of descent and distribution in intestate estates in" Massachusetts, with a spend-thrift clause applicable to the interests in both income and principal, where the son survived the widow and died without issue, the principal should be paid to the testator's next of kin determined as of the date of the testator's death, not as of the date of the son's death.  [445–447, 450–452]

Where a testator died leaving a widow and one child, the child was the testator's sole next of kin for the purposes of a remainder interest in a trust under the testator's will distributable to his "next of kin [determined as of the date of his death], according to the laws of descent and distribution in intestate estates in" Massachusetts.  [452–453]

PETITION for instructions filed in the Probate Court for the county of Bristol on March 16, 1962.

The case was heard by *Considine*, J.

*Maurice F. Downey* stated the case.

*Charles W. Deasy* for Rose F. Westgate & others.

*Edward J. Harrington, Jr.* (*Helen P. Brewer* with him) for Mary M. Sullivan.

*John D. Kenney* for The First Safe Deposit National Bank of New Bedford & another, executors, & others.

*Edward D. Hicks* for New Bedford Men's Mission, Inc.

SPIEGEL, J.  The petitioners seek instructions regarding the distribution of certain assets which they hold as trustees under the fifth clause of the will of the testator, John V. O'Neil, late of New Bedford.  The probate judge entered a final decree ordering the assets turned over to the executors of the will of John V. O'Neil, Jr., the only son of the testator; these executors and several beneficiaries under the will of the son are the appellees.  The appellants are nieces and nephews of the testator who claim the trust assets and the executors of the will of the testator's deceased sister.  The evidence is reported and the judge made a report of material facts.

Clause Fifth of the will, dated February 7, 1936, provides: "All the rest and residue of my estate, I give, bequeath and devise to The Safe Deposit National Bank of New Bedford and said William S. Downey jointly, in trust, nevertheless, for the following trust purposes: . . . Sec-

ond.   I direct my Trustees to pay over the net income of this trust to my wife, Florence L. O'Neil, so long as she shall live or remain my widow.   Third.   I direct my Trustees to pay over to my son, John V. O'Neil, Jr., the following sums out of the principal of this trust: 1.   The sum of Twenty-five Hundred (2,500) Dollars at the time he marries.   2.   The sum of One Thousand (1,000) Dollars when he reaches the age of thirty years.   3.   The sum of One Thousand (1,000) Dollars when he reaches the age of thirty-five years.   4.   The sum of One Thousand (1,000) Dollars when he reaches the age of forty years.   Fourth.   Upon the decease or remarriage of my said wife, I direct my Trustees, subject to the aforesaid payments of principal, to pay the net income of said trust to my said son, John V. O'Neil, Jr., for and during his life-time.   Fifth.   At the decease of my son, and after the decease or remarriage of my said wife, I direct my Trustees to pay over to my son's issue in equal shares, the net income from said trust until the youngest of my son's issue shall reach the age of twenty-one years, when my Trustees shall pay over the whole of said trust then remaining in equal shares to said issue, free of all trusts.   Sixth.   If by reason of death or remarriage or lack of issue living at my son's decease, the foregoing provisions cannot be carried out, I direct my Trustees to pay over the trust estate then remaining, free of all trusts, to my next of kin, according to the laws of descent and distribution in intestate estates in this Commonwealth.   Seventh.   Neither the income nor the principal of the legacies and trust estate herein created shall be assignable, or anticipated, or alienated in any manner by the beneficiaries, nor are they to be subject to the control or claims of creditors or subject to any process of law. . . ."

We herewith summarize pertinent portions of the judge's findings taken from his report of material facts.

On January 6, 1937, John V. O'Neil (the testator) died. In 1946, Florence L. O'Neil, the testator's widow, died. Later that year, John V. O'Neil, Jr., married Anna G. Ring, who is an appellee in the present case.   In 1947, the testa-

tor's sister, Elizabeth Clark, died. On December 20, 1961, John V. O'Neil, Jr., died, testate, without leaving issue. It is agreed that pursuant to the sixth section of the fifth clause in the testator's will the time has arrived for final distribution of the principal of the trust created under that clause.

The paramount issue before us is whether the term "next of kin," as used in the sixth section, refers to those who had this status on January 6, 1937, the date of the testator's death, or to those who were his next of kin on December 20, 1961, the date on which his son died. The appellees argue, and the Probate Court ruled, that the 1937 date is applicable; the appellants contend that under a proper construction of the will the next of kin are to be determined as of December 20, 1961.

In *Childs* v. *Russell*, 11 Met. 16, 23, Chief Justice Shaw said: "We consider that when a bequest is made to one or more for life, and remainder to the testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, the bequest is to those who are such heirs or next of kin at the time of his decease, unless there are words indicating a clear intention that it shall go to those who may be his relations or next of kin at the time of the happening of the contingency upon which the estate is to be distributed." Although in that case so much of the court's opinion as applied to the term "next of kin" was dictum, the same rule was applied to the term "nearest of kin" in *Keniston* v. *Mayhew,* 169 Mass. 166, 169, and has been restated often enough to be regarded as a settled rule of construction in this Commonwealth. *Whall* v. *Converse,* 146 Mass. 345, 348–349. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 531. *Perkins* v. *New England Trust Co.* 344 Mass. 287, 291. *Old Colony Trust Co.* v. *Stephens, ante,* 94, 96–97.

A rule of construction, however, should not be confused with a rule of substantive law. *Agricultural Natl. Bank* v. *Miller,* 316 Mass. 288, 291. We have repeatedly said that canons for the interpretation of wills are to be considered

only as aids for determining testamentary intent and should not be used to defeat that intent. *Ware* v. *Minot,* 202 Mass. 512, 516. *Worcester County Trust Co.* v. *Marble,* 316 Mass. 294, 297. *McKay* v. *Audubon Soc. Inc.* 318 Mass. 482, 486. The appellants contend that there is other language in the testator's will which tends to prove that he intended the term ''next of kin'' as used in the sixth section to refer to those who legally would occupy this status on the death of his son and not on his own death.

The appellants' strongest argument is that it is unlikely that the testator intended a contingent remainder to vest in his son (assuming his son to have been the ''next of kin'' in 1937) upon his son's death, where the express gifts in the will to the son were only a life interest in the trust and nominal payments of trust principal upon the happening of certain events during the son's lifetime. We see nothing unlikely in such a result. Perhaps a similar result would be more often accomplished by giving the life beneficiary a contingent power of appointment over the remainder, or a more restricted result accomplished by giving a contingent remainder to the life beneficiary's heirs. See *Old Colony Trust Co.* v. *Richardson,* 297 Mass. 147, 148–149. Cf. *Bailey* v. *Smith,* 222 Mass. 600, 602–603. Nevertheless, we have held in several cases that a gift of a life interest to an heir with a remainder in the testator's heirs does not prove that the heirs were to be determined at the time of the life beneficiary's death. *Keating* v. *Smith,* 5 Cush. 232, 235–236. *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 21. *Gilman* v. *Congregational Home Missionary Soc.* 276 Mass. 580, 584. We observe that the testator's will was drawn after these cases had been decided.

In another line of cases, however, we have held that where a testator gives a life interest to those who would have been his heirs in intestacy, and a contingent remainder to his ''heirs,'' these heirs are to be determined at the end of the life interest. *Fargo* v. *Miller,* 150 Mass. 225, 229–231. *Welch* v. *Brimmer,* 169 Mass. 204, 211. *Heard* v. *Read,* 169 Mass. 216, 222. *Brown* v. *Wright,* 194 Mass. 540,

545. *Welch* v. *Howard,* 227 Mass. 242, 246. *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247. In most of these cases, the court found some language in the testamentary instrument or some other facts to take the case out of the general rule that heirs of the testator are to be determined at the time of his death.

In *Fargo* v. *Miller, supra,* 230, the court seemed to be of the opinion that the absence of any reference to statutes of descent gave the word "heirs" a less strict meaning. In *Welch* v. *Brimmer, supra,* 208, 213, the word "then," followed by other language, was significant. The proviso there in question read: "Provided, however, that in case my said son shall die having no issue him surviving, or such issue shall decease during minority, then, and in either of such cases, my will is that my sister Eliza Oliver shall have and take the said moiety of my estate . . .; and if the said Eliza O. shall not then be living, I give said estate, with its accumulations, to the person or persons who shall be my heir or heirs at law." As the court construed the proviso, the word "then" modified not only "shall not be living" but also the verb "shall be" in the syntactical clause "who shall be my heir or heirs at law." In *Heard* v. *Read, supra,* 224, a case analagous to *Welch* v. *Brimmer, supra,* the court did not apply the general rule. The court reasoned that the contingent remainder was to the testator's "heirs" whereas his heir at law would have been only one person and that the testator's use of the words "as though I died intestate" described the manner in which the disputed half of the estate was to be distributed after the life beneficiary's death with no surviving issue.

In *Brown* v. *Wright,* 194 Mass. 540, 545, the general rule was not applied because, among other reasons, the heirs and life beneficiary, whose legatees were claiming under the rule, had been entitled only to a limited share of the trust income during her lifetime. In *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247, the court noted a manifest intent on the testator's part to keep the bulk of the property in his own family.

Thus far, there is little in the case at bar to indicate a result similar to that reached in the cases just discussed. Although the testator does refer to the "laws of descent and distribution in intestate estates in this Commonwealth" to modify the term "next of kin" and although the will does use the word "then," it is not used in the same sense as it is in *Welch* v. *Brimmer, supra.* There is no adverb or adverbial phrase to indicate that the testator intended that his next of kin be determined at any time other than the time of his death. The term "next of kin" may, of course, be singular as well as plural. In the instant case, the net income from the trust created under the fifth clause was to be distributed to the son after the death or remarriage of the testator's wife. Furthermore, there is no apparent plan in the present will from which we can infer an intent on the part of the testator to keep his property in the possession of that portion of the "family" represented by the appellants.

In *Welch* v. *Howard,* 227 Mass. 242, 246, it was said: "That the intention was not to vest the remainder in the life tenants may be inferred from the fact that they were the sole heirs at law at the time the will was made, that they survived the testator, and that their interest could never vest in possession. *Fargo* v. *Miller,* 150 Mass. 225, 230. *Welch* v. *Brimmer,* 169 Mass. 204, 212. *Heard* v. *Read,* 169 Mass. 216, 223."

Since the above quoted paragraph appears to be the point upon which the decision rests, that case is in conflict with *Gilman* v. *Congregational Home Missionary Soc.* 276 Mass. 580, 584, and other cases cited, *ante,* in support of the general rule. However, subsequent cases show that the actual holding of *Welch* v. *Howard, supra,* was far less broad than the language therein would imply. In *Brown* v. *Spring,* 241 Mass. 565, 568, we cited *Welch* v. *Howard, supra,* as a case taken out of the general rule of construction because the contingency clause contained the word "then." (Such a reading would harmonize the holding of the case with that of *Welch* v. *Brimmer,* 169 Mass. 204, 211.) In *Tyler* v. *City*

*Bank Farmers Trust Co.* 314 Mass. 528, 532, we referred to "other circumstances" as taking *Welch* v. *Howard, supra,* out of the general rule. Similar distinctions were drawn in *Thompson* v. *Bray,* 313 Mass. 717, 720, and *Old Colony Trust Co.* v. *Clarke,* 291 Mass. 17, 22. In short, although the case at bar falls within the language of *Welch* v. *Howard, supra,* the facts thus far discussed do not by themselves take this case out of the general rule that next of kin are to be determined at the time of the testator's death. To the extent that *Welch* v. *Howard, supra,* may be authority for a contrary result, we choose not to follow that case.

The appellants also argue that if the testator intended by the sixth section of the fifth clause that the remainder of the trust should go to his son's estate, then the practical effect would be that creditors could attach the estate on the son's death and the purpose of the spendthrift clause would be to a great extent undone. In two cases, we adopted similar arguments and held that the heirs were to be determined at the time of the life beneficiary's death when the "scheme of distribution" in the will pointed to such a result. *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 247–249. *Thompson* v. *Bray,* 313 Mass. 717, 722.

We rejected the above argument in a case in which the spendthrift clause was the only evidence that the testator had intended his heirs to be determined upon the death of the life beneficiary. *Rotch* v. *Rotch,* 173 Mass. 125, 131–133. Again, in *Old Colony Trust Co.* v. *Clarke, supra,* 21–22, we rejected that contention; in that case, as in the case at bar, it was coupled with the point that the life beneficiary was the testator's heir, in whose estate the testator would not have intended to leave the contingent remainder. Furthermore, as in the *Rotch* case, *supra,* 132–133, we note that the testator could have imposed the spendthrift clause in order to provide any children that his son might have (see fifth section, fifth clause) with the largest possible estate. Although the testator had only one child, he could not predict how many children his son might have and may have intended that as much as possible of the trust principal re-

main for their enjoyment. If this were his purpose, it hardly follows that he intended to keep the trust assets out of his son's estate should his son die childless.

We note also that the spendthrift clause seemed to govern not only that trust in which John V. O'Neil, Jr., had a life interest but all other trust interests established by the will including the trust established under the fourth clause,[1] in which the mother of four of the appellants, Elizabeth Clark, had an equitable life interest. It does not appear, therefore, that the testator was obsessed with the single purpose of restraining his son. Nor is there any reason to believe that the testator was particularly mindful of providing the largest possible estate for his nieces and nephews while restricting the estates of his wife, his sister, and his son.

The appellants introduced testimony showing the circumstances surrounding the relationship between the testator and the claimant appellants. They contend that it was error for the probate judge not to include in his report of material facts a finding based on this testimony. We are of the opinion that the testimony was of no probative value, and in any event, the judge was not required to advert to it. *Building Inspector of Salem* v. *Gauthier,* 259 Mass. 615, 616.

The only remaining issue concerns the determination of the persons who were the testator's next of kin on January 6, 1937, the date of his death. The judge held that only his son, John V. O'Neil, Jr., answered to this description and

---

[1] "Fourth. I give to The Safe Deposit National Bank of New Bedford and William S. Downey, attorney of said New Bedford, jointly, the sum of Five Thousand (5,000) Dollars, to hold in trust and to pay over the net income to my sister, Elizabeth Clark, for and during her life-time; and upon her decease to pay over the sum of One Hundred (100) Dollars to Florence Clark, the sum of One Hundred (100) Dollars to Rose Westgate, and the sum of Two Hundred (200) Dollars to William Clark; and to turn over the balance of the said sum of Five Thousand (5,000) Dollars to the residue of my estate. In the event that the said Florence Clark, Rose Westgate or William Clark shall have died before Elizabeth Clark, leaving issue, such issue shall take the parent's share by right of representation, but in case either shall have deceased leaving no issue the share of such deceased shall be paid to the survivors or survivor or to the issue by right of representation in equal shares. In the event that all shall have deceased before Elizabeth Clark without issue, then the said sum of Four Hundred (400) Dollars shall become part of the residue of my estate."

ordered the petitioners to turn over the remaining principal to the son's estate.   He specifically held that the testator's wife was not next of kin under a proper construction of the will.   We agree with this disposition.

In this Commonwealth, the words next of kin are limited to blood relations and do not include spouses, unless there is a clear intention to the contrary; such an intention will not be inferred from mere reference to the law of descent and distribution.   *Haraden* v. *Larrabee,* 113 Mass. 430, 431. See *Bailey* v. *Smith,* 222 Mass. 600, 602.   Furthermore, the statute of descent and distribution, as it appeared at the time of the testator's death (G. L. c. 190, § 1), distinguishes between kindred and spouses.   Likewise, c. 190, § 3, seems to distinguish between the share to which a spouse is entitled and rules governing descent to blood relations.

Accordingly, we hold that under c. 190, § 3 (1), the testator's next of kin at his death in 1937 was his son, John V. O'Neil, Jr.   Costs and expenses of appeal are to be in the discretion of the Probate Court.

*Decree affirmed.*