OLD COLONY TRUST COMPANY, trustee, *vs.* FRANCES LOCKE CLARKE & others.

Middlesex.     February 4, 5, 1935. — May 6, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Devise and Legacy,* Time of vesting, "Heirs at law." *Trust,* Construction of instrument creating trust. *Executor and Administrator,* What are assets of estate, Foreign. *Conflict of Laws.*

In the will of a widower setting up a trust and directing the trustee to pay income to the testator's son, who was his only child and was largely dependent on him, for life and to his son's wife in certain contingencies, and upon the death of the son to terminate the trust and pay over the principal "then remaining . . . to my heirs at law by right of representation," both principal and income being subject to a spendthrift clause, there was nothing to show that the testator intended that in the distribution of the principal his heirs were to be determined as of the time of his son's death, and therefore his heirs should be determined as of the time of his own death in accordance with the general rule; the son, as the sole heir of the testator at the time of the latter's death, took a vested remainder interest, and the son's estate was entitled to the principal upon termination of the trust at his death.

Where it appeared, upon a petition for instructions as to the distribution of the principal of a trust upon the death of the life beneficiary, that a deceased person had had a vested remainder interest in the entire principal, it was error to order the principal distributed directly to his heirs; the petitioner should have been ordered to pay it over to a personal representative of the decedent appointed in this Commonwealth, although the parties to the petition agreed that the sole issue was the determination of the class who had the remainder interest and although notice was given to and the petition was taken for confessed against one alleged in the petition to be personal representative of the decedent appointed in another State of which he was a resident.

A personal representative of a decedent appointed in another State cannot be recognized as his representative by the courts of this Commonwealth in litigation with respect to a trust established here, of which the decedent was a beneficiary.

PETITION for instructions, filed in the Probate Court for the county of Middlesex on April 6, 1934, and afterwards amended.

The petition was heard by *Monahan*, J. Material facts and the decree entered by his order are described in the opinion. Certain respondents appealed.

*H. L. Burnham*, stated the case.

*E. A. Bayley*, for the respondents Frances Locke Clarke and another.

*G. C. Peterson*, for the respondents Lizzie M. Miller and another.

QUA, J. This is an appeal by the respondents Frances Locke Clarke and George C. Marvin from a decree entered by the Probate Court on a petition for instructions by the trustee under the will of Warren E. Locke, late of Lexington, deceased.

The controversy arises out of the fourth and fifth paragraphs of the will which read as follows: "Fourth All the rest, residue and remainder of my estate, of which I may die seized and possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath to my said brother, Herbert G. Locke, but in trust, nevertheless, for the following uses and purposes, namely, — to hold, manage, invest and reinvest the same, and the proceeds thereof, and to pay the net income derived therefrom quarterly, or at such times as my said trustee shall deem advisable, as follows, — two thirds thereof to my son, Charles A. Locke, of Pawtucket, Rhode Island, during his lifetime, for the maintenance, support and comfort of himself and his family, and the remaining one-third of said net income to my son's wife, Bertha Locke, so long as my son and his said wife shall live together. In the event that they separate or cease to live together by reason of the neglect or failure of my son to apply his income for the proper maintenance, support and comfort of himself and family, or for any other reason not due in the judgment of my trustee to the fault of my said daughter-in-law, I authorize my trustee to continue said payment to my said daughter-in-law if in his discretion he deems it wise and just so to do.

I further give my said trustee full power and authority to expend any part of the principal of said trust for the purposes herein-named, if in his judgment the net income derived therefrom shall prove or become insufficient therefor. I expressly direct and provide thàt no part of said income or principal shall be alienable by my said son or daughter-in-law, either by assignment, or by any other method whatsoever, and that the same shall not be subject to be taken or reached by his or her creditors by any legal or equitable process whatsoever, nor shall the same pass in any event to his or her assignee or trustee under any trust deed which either of them may execute, or under any insolvent or bankrupt law whatsoever. In the event that my son survives my said daughter-in-law, or in the event that they separate or cease to live together for a cause due to her fault by decree of any competent Court, then said payment herein provided for my said daughter-in-law shall terminate, and the whole of said net income shall be paid to my son, as hereinbefore provided. Fifth  Upon the decease of my said son, said trust shall terminate, and the balance of said trust estate then remaining, I give, devise and bequeath, and direct my trustee to pay over the same discharged of all trusts, to my heirs at law by right of representation."

In the Probate Court the case was heard on an agreed statement of facts from which and from the pleadings the following facts appear: The will was executed in 1910, when the testator was about sixty-nine years of age. At that time he was a widower. His only child was the son named in the will, Charles A. Locke, who then lacked a few days of being forty-six years old and who was then living with his wife. The testator had held responsible positions for many years, including for a time the office of savings bank commissioner. He was a man of strong family interest and affection. He fully realized that his son Charles had little ability to support himself or to care for business and financial matters and that the son had always been largely dependent upon the testator for support, including the support of his wife after their marriage. The testator

died in 1911. His only heir at law at that time was his son Charles. Charles died, as the parties apparently agree, on January 6, 1934, on which date the petitioner had in its hands as trustee "funds of the accounting value of $29,927.37." If the heirs at law of the testator were to be ascertained as if he had died immediately after the death of Charles, they would be his niece, the respondent Frances Locke Clarke, daughter of a deceased brother, and his nephew George C. Marvin, son of a deceased sister. The sole heirs at law and next of kin of Charles A. Locke are his cousins last above named and also two cousins on his mother's side, the respondents Lizzie M. Miller and Lydia A. Shapleigh.

The agreed statement of facts contains the following paragraph: "The only issue to be determined is whether upon the decease of his said son Charles, it was the intention of the testator that the distribution of his trust estate then remaining should be made to those who were his heirs-at-law at the time of his own death, or whether it was his intention that said distribution was then to be made to those who were his own heirs-at-law at the time of the death of his son."

The decree was right in ascertaining the heirs at law of the testator as of the date of his own death rather than as of the date of the death of his son Charles. It has been an established rule of construction, at least from the time of Chief Justice Shaw, that "when a bequest is made to one or more for life, and remainder to the testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, the bequest is to those who are such heirs or next of kin at the time of his decease, unless there are words indicating a clear intention that it shall go to those who may be his relations or next of kin at the time of the happening of the contingency upon which the estate is to be distributed." *Childs* v. *Russell*, 11 Met. 16, 23. It is unnecessary to discuss the reasons for this rule or to cite the long line of cases in which the rule has been applied, running down to the present time (*Gilman* v. *Congregational Home Mission-*

*ary Society,* 276 Mass. 580, *Calder* v. *Bryant,* 282 Mass. 231), for the appellants do not dispute the rule itself, but rest their cause upon the contention that this is one of the comparatively few cases in which the will does indicate that the testator intended that his heirs at law should be ascertained as of the date of the death of his son instead of the date of his own death.

We are unable to agree with this contention. We find nothing in this case to take it out of the general rule. In our opinion Charles A. Locke as the sole heir of the testator at the time of the testator's death took a vested estate in the remainder upon the termination of the trust. It has long been established that there is no such incongruity in a beneficiary having a life interest being also a vested remainderman as necessarily to prevent the word "heirs" carrying its usual meaning. *Jewett* v. *Jewett,* 200 Mass. 310. *Blume* v. *Kimball,* 222 Mass. 412. *Crowell* v. *Chapman,* 257 Mass. 492. *Old Colony Trust Co.* v. *Sullivan,* 268 Mass. 318. *Childs* v. *Russell,* 11 Met. 16, 24. *Abbott* v. *Bradstreet,* 3 Allen, 587. And this is true even though the sole life tenant of the entire estate may also be an heir, *Keating* v. *Smith,* 5 Cush. 232, 236, or the sole heir. *Gilman* v. *Congregational Home Missionary Society,* 276 Mass. 580, 584.

We see nothing in the fact that the testator obviously did not intend that his son should have control and management of the property in the son's lifetime and in the spendthrift provisions by which the son was to be safeguarded which should lead us to suppose that the testator did not intend to give his son a vested inheritable right in the remainder. In most of the cases where the remainder has been held vested the life tenant has had no control of it in his lifetime beyond the possibility of assigning it, and in this case the spendthrift protection is expressly extended to the principal as well as to the income, a precaution which would seem to have been unnecessary unless the life tenant was intended to have a vested and therefore, were it not for the spendthrift restriction, an assignable interest in the remainder. In *Rotch* v. *Rotch,* 173 Mass. 125, 131, a spend-

thrift restriction which went so far as to forbid disposal of the beneficiary's interest in the testator's estate by will as well as by assignment was held not to prevent the ascertainment of the "heirs" as of the death of the testator. So also a provision that the share of the income payable to daughters should be paid to them independently of their husbands does not warrant the inference that the daughters were not intended to take in remainder. *Jewett* v. *Jewett*, 200 Mass. 310, 317.

The words "then remaining" in the fifth paragraph of the will obviously refer to the property left at the time of distribution and do not bear upon the time when the remainder should vest. *Welch* v. *Blanchard*, 208 Mass. 523. *State Street Trust Co.* v. *Sampson*, 228 Mass. 411, 413. *Thompson* v. *Clarke*, 264 Mass. 56, 60.

We have examined carefully the cases relied upon by the appellants: *Fargo* v. *Miller*, 150 Mass. 225, *Welch* v. *Brimmer*, 169 Mass. 204, *Heard* v. *Read*, 169 Mass. 216, *Welch* v. *Howard*, 227 Mass. 242, *Mullaney* v. *Monahan*, 232 Mass. 279, and *Boston Safe Deposit & Trust Co.* v. *Waite*, 278 Mass. 244. In all of them there were special circumstances not present in this case indicating an intention that the heirs should be determined as of the time of distribution rather than as of the time of the testator's death. To discuss these differences in detail would unduly extend this opinion. The case last mentioned, upon which the appellants place special reliance, is distinguishable, among other reasons, in that the spendthrift provisions would have been weakened or destroyed if the remainder were vested at the death of the testator. As already pointed out, that is not true in the present case.

On the other hand, a construction which would prevent the vesting of the remainder at the death of the testator would very likely have deprived the testator's daughter-in-law, who had been dependent upon him and for whom he carefully provided during his son's lifetime, of all support from his estate immediately upon the decease of the son, if she had survived as the son's widow, an event which must have seemed to the testator quite probable.

We attach little significance to the words "by right of representation" following the words "to my heirs at law." See *Siders* v. *Siders*, 169 Mass. 523. Whatever these words mean as here used, they would apply as of whatever time the heirs are determined and at least they have no tendency to show that the vesting of the estate was to be postponed. Similar language in *Upham* v. *Parker*, 220 Mass. 454, 456, did not prevent the application of the ordinary rule.

The remainder in this fund, which apparently consists of personal property, was vested in Charles A. Locke in his lifetime. It is therefore subject to just claims, if any there be, against his estate. For this reason we think that notwithstanding the statement of the issue contained in the agreed facts and quoted above, the decree should not have compelled the petitioner to distribute the fund directly to the respondents as Charles A. Locke's heirs, but should have required it to pay to his administrator or executor, appointed in this Commonwealth. *Olney* v. *Balch*, 154 Mass. 318, 322. *Russell* v. *Joys*, 227 Mass. 263, 268. If the petitioner chooses to pay directly to the heirs, it must do so at its own risk as to the rights of the legal representative of the estate. *Heard* v. *Read*, 169 Mass. 216, 220. This is true even though the petitioner names as a party an administratrix alleged to have been appointed in the State of New York, where it is alleged Charles was a resident at his death, and though the decree recites that notice was given to her and that the petition has been taken for confessed against her. It does not appear that she in fact became a party. Nor can a foreign administrator as such be recognized by our courts in litigation here as the representative of a deceased beneficiary under a Massachusetts trust. *Beaman* v. *Elliot*, 10 Cush. 172. *Cassidy* v. *Shimmin*, 122 Mass. 406, 412. *DeVeer* v. *Pierson*, 222 Mass. 167, 175. *Brown* v. *Boston & Maine Railroad*, 283 Mass. 192, 195. Compare, however, as to voluntary payment to a foreign representative, *Gardiner* v. *Thorndike*, 183 Mass. 81, and *Morrison* v. *Hass*, 229 Mass. 514, and see G. L. (Ter. Ed.) c. 204, § 3, as to the Probate Court licensing a foreign executor or administrator to receive and dispose of assets in this Commonwealth.

Because of this error the decree must be reversed, and a decree must be entered for payment of the fund to an administrator or executor of the estate of Charles A. Locke appointed in this Commonwealth. Costs of this appeal as between solicitor and client are to be taxed in the discretion of the judge of probate.

*Ordered accordingly.*