BENTLEY W. WARREN, trustee, *vs.* FREDERICK M. SEARS, JR., administrator, & others.

Suffolk.   November 17, 1938. — July 12, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Devise and Legacy,* "Heirs at law," Remainder. *Probate Court,* Petition for instructions. *Words,* "Heirs at law."

Upon construction of a will and codicils, the words "heirs at law," in a gift over of a trust estate to the testator's heirs at law on the death of his grandson, meant heirs at law to be determined as of the death of the grandson, thus causing distribution to the grandson's children instead of to them and to others through estates of the testator's son and daughter.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on February 15, 1938.

The petition was heard by *Dillon,* J.

*J. D. Dow, Jr.,* stated the case.

*L. Patrick,* for Frederick M. Sears, Jr., administrator *de bonis non* with the will annexed of Jennie B. Dana.

*J. W. Black, Jr.,* for Florence A. Jordan & another.

*M. M. Johnson,* for J. W. Black, Jr., administrator *de bonis non* with the will annexed of Horace A. Jordan.

*N. Leonard,* for the guardian *ad litem,* submitted a brief.

DOLAN, J. This is a petition by the surviving trustee under the will of Horace W. Jordan, late of Boston, deceased, for instructions whether upon the death of Horace W. Jordan, a living grandson of the deceased, the trust estate held for the grandson's benefit will be distributable to the heirs of the testator determined as of the date of his death, or as of the future date of the death of the grandson.

The judge of probate entered a decree that, upon the death of the grandson and present beneficiary, the trust

estate will be distributable to the heirs of the testator, as if the testator had died immediately following the death of his grandson. The case comes before us on the appeal of the administrator *de bonis non* with the will annexed of Jennie B. Dana, a deceased daughter of the testator. The evidence is not reported. The facts alleged in the petition are not disputed.

The testator died in 1902. He was survived by a son, Horace A. Jordan, a daughter, Jennie B. Dana, and a grandson, Horace W. Jordan. The will of the testator was executed on June 29, 1895. Therein he devised and bequeathed the residue of his estate in trust upon the following terms: "the net income to pay to my son and daughter in equal shares . . . and upon the death of my son or daughter, whichever may first occur, leaving issue him or her then surviving, then one half of the trust estate to be conveyed to such issue, the same taking by way of representation, and in case he or she should die and leave no issue him or her surviving, then to pay the entire income to the survivor during his or her life, subject to the same provisions as hereinbefore made as to anticipation, and upon the death of the survivor leaving issue him or her surviving, then the trust estate to go to such issue the same taking by way of representation, and in default of issue then surviving, the said estate to go to such persons as would be entitled to receive the same under the laws of Massachusetts then in force, had said survivor died intestate and seized and possessed of said estate. Provided however, that any money or estate going under this will to my grandson, Horace A. [*sic*] Jordan shall not be paid to him outright but shall continue to be held by the trustees, they paying only so much of the net income thereof for his maintenance and support as they in their discretion shall deem proper, intending hereby to give to my trustees absolute and full discretion as to the amount and times of payment to my said grandson, and provided further, that the same shall be paid to him on his sole and separate order and receipt not by way of anticipation, and so that the same cannot be pledged, mortgaged or in anyway alienated by him, and

upon his death to pay the principal to my heirs at law." By a first codicil dated December 9, 1897, the testator gave his daughter Jennie a general power of appointment over "so much of the principal of the trust fund . . . as at the time of her death she was entitled to receive the income of" and provided that "in default of such appointment the principal of said trust fund . . . [should] be disposed of in the manner provided in . . . [his] will in case she should die leaving no issue her surviving." In this codicil he further provided as follows: "In case my son Horace A. Jordan should die leaving his wife, Addie Jordan him surviving, I direct that my said trustees may pay for her support during her widowhood, such sums as they may deem expedient, but in no event to exceed the sum of One thousand dollars a year, and for that purpose my trustees may continue to hold so much of the principal of said trust fund as at the time of my son's death he was entitled to receive the income of, or such part thereof as they may deem advisable, during the widowhood of said Addie Jordan." Under the terms of a third codicil executed by the testator on February 26, 1900, he revoked the provisions of the first codicil whereunder he had given his daughter the power of appointment.

Horace A. Jordan, the son of the testator, died on April 21, 1919, survived by his wife and his son, Horace W. Jordan. He left a will wherein he gave the residue of his estate to his wife, Adelaide, who died intestate on June 22, 1935, leaving as her only heir her son, Horace W. Jordan. Jennie B. Dana, the daughter of the testator, died testate on November 30, 1933, never having had issue, and leaving as her sole heir at law the same Horace W. Jordan, who thereupon became entitled (in the discretion of the trustee) to the entire net income of the trust estate, which was to be held for his benefit during his life.

When the present petition was filed, as before stated, Horace W. Jordan, the testator's grandson, was living. Hence the question presented related to future duties of the petitioner, the trust not having terminated. The petitioner alleged, however, that the representatives of the

estate of Jennie B. Dana and those who take under her
will seek to have her future interest, if any, in the trust
estate adjudicated now, in aid of questions which have
arisen in the settlement of her estate in connection with
the Federal tax.   But since the case was argued in this
court Horace W. Jordan, the grandson of the testator,
has died, leaving two minor sons, Robert and Richard T.
Jordan, and the trust has terminated.   Accordingly, the
question now presented for determination is no longer one
with respect to future duties of the petitioner (see *Boyden*
v. *Stevens,* 285 Mass. 176, 180, and cases cited; see also
G. L. [Ter. Ed.] c. 215, § 6B added by St. 1935, c. 247)
but is one that concerns his present duty in connection
with the distribution of the trust estate.   The sole issue
is whether the principal of the trust estate is distributable
to the heirs of the testator determined as of the date of his
death, or to his heirs at law determined as if he had died
immediately following the death of his grandson.

It is an established rule of construction that when a be-
quest is made to one or more for life and remainder to the
testator's heirs at law the bequest is to those who are such
heirs at the time of the death of the testator, unless there
are words indicating a clear intention that it shall go to
those who may be his heirs "at the time of the happening
of the contingency upon which the estate is to be distrib-
uted."   *Childs* v. *Russell,* 11 Met. 16, 23.   *Gilman* v. *Con-
gregational Home Missionary Society,* 276 Mass. 580.   *Calder*
v. *Bryant,* 282 Mass. 231.   *Old Colony Trust Co.* v. *Clarke,*
291 Mass. 17, 21.

In *Gilman* v. *Congregational Home Missionary Society,*
276 Mass. 580, at page 583, the court said: "A testator
usually resorts to the word 'heirs' to express the objects of
his bounty after having exhausted his specific wishes and
is content otherwise to let the law take its course.   It has
been often said that the law favors the creation of vested
rather than contingent estates.   Nevertheless the aim in
every case involving the interpretation of wills is to ascer-
tain the intent of the testator from the whole instrument
and then to give effect to that intent unless prevented by

some positive rule of law. Therefore, if the word 'heirs' is used clearly in some sense different from its correct meaning, or as indicating some restriction upon that class, that meaning will be given effect." See also *Carr* v. *New England Anti-Vivisection Society*, 234 Mass. 217, 219; *Boston Safe Deposit & Trust Co.* v. *Waite*, 278 Mass. 244; *Calder* v. *Bryant*, 282 Mass. 231, 234; *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, and cases cited.

The respondent sons of the testator's grandson, who contend that the heirs of the testator are to be determined as if the testator had died immediately after his grandson, have urged in effect that, since the testator revoked the power of appointment given by the first codicil to his daughter, it would be inconsistent with the intent to be inferred therefrom to hold that under the terms of his will the testator intended his daughter to have a vested remainder in the one half of the trust estate of which she enjoyed the income, because such a remainder is transmissible, assignable and descendible, with the result that this remainder interest would pass by her will, despite the revocation of the power to appoint by will given her by the first codicil. They also contend that a reading of the will as a whole discloses that the dominant purpose of the testator was to provide for his lineal descendants, and that he did not intend that the trust estate should pass through the estates of his son and daughter upon the termination of the trust. We are of opinion that these contentions must be sustained.

If it was the intention of the testator by the terms of the will that, in the events that have occurred, his daughter should have a vested remainder in fee in that portion of the trust estate of which she was to enjoy the income, such an interest being assignable, transmissible and descendible, it is difficult to conceive the motive that prompted him to confer upon her by codicil a power to appoint by will when, as matter of law, the right to do so would be an incident to ownership of a vested remainder. It is equally difficult to reconcile any intent on his part that his daughter was to have a vested remainder in the present circumstances, with his action in revoking the power of appointment given

her under the first codicil. "The power of appointment by will is not a property right but a personal privilege." *Forbes v. Snow*, 245 Mass. 85, 93. The right, however, to dispose of a vested interest by will is a property right. The power to appoint by will is "a deputation of the donee to act for the donor in disposing of the donor's property." *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600, 602. The deputation of his daughter by the testator to appoint by will that part of the trust estate to the income of which she was entitled, and his subsequent revocation of that privilege, seem to us to be inconsistent with any intent on his part that she should have the right as matter of law to dispose thereof by will or otherwise. It may be suggested that the power given to the daughter and later revoked applied to but one half of the trust estate, and that these provisions have no bearing on the share of the trust estate of which the testator's son was to have the income. Considering, however, the attitude of the testator toward the latter's son Horace as disclosed by the will, we think it is a fair inference that, when he conferred upon his daughter the general power to appoint by will, he did not confer a like power upon his son lest by its exercise the testator's grandson should come into the whole or some part of the trust estate outright. To rule that the testator intended that his heirs should be determined as of the date of his own death would mean that there would thus be accomplished by indirection that which in the case of his daughter at least he had once provided for by express direction and then abandoned. In its final form as it came from the hands of the testator, we discover nothing in the will to show that the testator intended to provide for his daughter and his son in any other than the same manner. As we read the will we think that the testator did not intend by the gift over to his heirs, upon the death of his grandson, that his, the testator's, heirs should be determined as of the date of his own death, thus causing the trust estate to pass, upon the termination of the trust, through the estates of his son and daughter.

This view is also supported by the provision of the will

to the effect that, upon the death of the survivor of his children leaving no issue, the trust estate (and we construe "trust estate" to mean of necessity whatever thereof should continue to be held in trust for the survivor) shall "go to such persons as would be entitled to receive the same under the laws of Massachusetts then in force, had said survivor died intestate and seized and possessed of said estate." This direction of the testator for the succession of the trust estate in the event of the death of the survivor leaving no issue, which has actually occurred, is not consistent with an intent on his part that his children should have a power of disposition, a power that would be the concomitant of a vested remainder. This provision is followed by that before set forth to the effect that any money or estate "going under" the will of the testator to his grandson Horace should not be paid to him outright. We think the latter provision embraced not only that one half of the trust estate which except therefor would have gone to the grandson outright upon the death of his father, but also the remaining one half which otherwise would have gone to him outright upon the death of his aunt as her sole heir, since she died leaving no issue. Had the grandson Horace died leaving issue before his father and his aunt, instead of having survived them, his issue upon the death of his father would have been entitled to receive one half of the trust estate as issue of the latter, and upon the death of their grandaunt, without leaving issue, as has happened, would have been entitled to receive the other half of the trust estate as her heirs at law.

In the events that happened, however, due to the restrictive clause, applicable solely to him, the testator's grandson upon the death of his father did not take one half of the trust estate outright, and likewise upon the death of his aunt, whose sole heir he was, he did not take the other one half of the trust estate outright, but until his death he was entitled only to such portions of the income from the trust estate as the trustees should see fit to pay to him.

We think that this provision was a restriction upon the right of this particular person to take outright as issue of

his father or as heir of his aunt, rather than a provision intended to change the ultimate devolution of the trust estate in accordance with the comprehensive scheme of the testator's will, indicating a dominant interest in his lineal descendants, as opposed to strangers to his blood. In the pertinent paragraph of his will the testator used the word "issue" frequently. He must be taken to have known that it is a word of broader significance than the word "children," including as it does lineal descendants indefinitely. The spendthrift provisions in the will relate only to income payable to his children and, under the restrictive clause, to his grandson. In this respect the case is distinguishable from *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, 21, where the spendthrift protection was expressly extended to principal as well as income, and where it is said that this precaution would seem "to have been unnecessary unless the life tenant was intended to have a vested and therefore, were it not for the spendthrift restriction, an assignable interest."

We are of opinion that by the gift over to his heirs upon the death of his grandson Horace, should it happen, as it did, that the distribution of the trust estate was interrupted by the necessity of holding the whole or any part of the trust fund under the restrictive terms applicable solely to his said grandson, the testator did not intend that upon the death of the former his, the testator's, heirs should be determined as of the time of his own death, but rather that they should be determined as if he had died immediately after his grandson. Under this construction the trust estate is payable in equal shares to the children of the testator's grandson, the lineal descendants of the testator.

The decree entered in the Probate Court is affirmed and costs and expenses of this appeal may be allowed in its discretion.

*Ordered accordingly.*