177 So.2d 817

Eleanor Duane Chase MASTIN et al.

v.

MERCHANTS NATIONAL BANK OF MOBILE et al.

I Div. 254.

Supreme Court of Alabama.

Aug. 5, 1965.

Thornton & McGowin, Mobile, for appellants.

Lyman F. Holland, Jr., Chas. B. Arendall, Jr., Hand, Arendall, Bedsole & Johnston, Geo. A. Stone, Jr., Ralph Kennamer, Vincent F. Kilborn, Inge, Twitty, Duffy & Prince, and McCorvey, Turner, Johnstone, Adams, & May, Mobile, for appellees.

MERRILL, Justice.

This case is related to the cases, Mastin v. First National Bank of Mobile, Ala., 177 So.2d 808,[1] this day decided, but presents different questions and is concerned with a different trust. The appeal is from a de-

[1.] Ante p. 251.

cree in a declaratory judgment proceeding to construe an inter vivos trust.

On August 15, 1930, Dr. William M. Mastin of Mobile received from his daughter Zemma $100,000 worth of securities by bill of sale. That same day, Dr. Mastin executed a trust agreement with The Merchants National Bank of Mobile. The trust agreement covered the identical securities which Zemma had transferred to him. The trust was for her use and benefit. Dr. Mastin died in February, 1933, leaving surviving him his widow and his daughter Zemma. His widow died intestate in December, 1938, leaving Zemma as her sole heir and next of kin. Zemma died on July 6, 1962, leaving a will and her next of kin were a first cousin, Claudius Henry Mastin Roberts, and the appellants, who are the widow and children of another first cousin, Edward Vernon Metcalfe Mastin. [Since this trust is of personal property, it passes to the doctor's next of kin rather than heirs. However, as they are the same in this case, the term "heirs" is sometimes used for sake of brevity, though the term next of kin would be more accurate.]

Zemma Mastin was properly cared for all her life and at her death, the trust fund still amounted to $100,287.45. The trustee, The Merchants National Bank of Mobile, filed a bill for declaratory judgment seeking instructions from the court as to whom the balance in the trust should be paid.

The significant incidents of the trust were:

a—all income was payable to Zemma for life;

b—the trustee was given broad powers of investment and sale, subject to advice by Dr. Mastin during his lifetime, and after his death, advice by Zemma;

c—the trust was irrevocable;

d—the trustor reserved the right during his lifetime to make payments out of the principal to Zemma;

e—after his death, Zemma had the right to demand 50% of the principal during her life or by will, and during her lifetime, the trustee could use it all for Zemma;

f—upon Zemma's death, the trustee should pay all her debts, funeral expenses, costs and expenses of the administration of her estate; and

g—"distribute and pay over the whole * * * as may be directed by the said Trustor in his last will."

We quote the only provision in the trust relating to the unused portion of the trust:

"* * * and upon the decease of the said Beneficiary to pay all of her just debts, all expenses incident to her last illness and funeral and the cost and expenses of such administration of her estate as might be deemed necessary, then this trust to terminate and thereupon as soon after the said Beneficiary's death as may be practicable and convenient to do so, to liquidate the trust fund and estate hereby created and distribute and pay over the whole thereof then remaining as shall or may be directed by the said Trustor in his last will and testament, provided the said Trustor predecease the said Beneficiary, otherwise the same to be paid over by the Trustee to the said Trustor."

Dr. Mastin executed his will ten days after setting up this trust, but made no mention of it. Zemma could have drawn 50% of the trust assets by deed or disposed of 50% by will, but she did not specifically exercise the power. It never became necessary for her to use any of the trust assets during her lifetime other than income, and her own estate was solvent.

The decree of the trial court held that by Item Twelfth of Zemma's will (Mastin v. First National Bank of Mobile, Ala., 177 So.2d 808 [2]), she "exercised a testamentary power of appointment" of 50% of the trust and held that the balance of the trust "shall

2. Ante p. 251.

constitute a portion of the probate estate" of Dr. Mastin and be paid over to the executor of his estate. (His executor was still qualified and functioning as such.)

Appellants argue that the court erred in holding that Item Twelfth of Zemma's will exercised the power over 50% of the trust assets; and erred in not holding that the trust descended to the doctor's heirs who were determined at the time of the termination of the trust.

We treat the last objection first, because the most important question presented is the determination of the *time* at which the heirs of Dr. Mastin are determined. If they are determined as of the death of Dr. Mastin, then his widow and Zemma were his heirs and next of kin and when his widow died intestate, Zemma was his sole heir. But if his heirs are determined as of the termination of the trust—after Zemma's death—then the appellants and the other nephew are his only heirs and next of kin.

Appellees contend that there was an interest "remaining" in Dr. Mastin when he created the trust (technically, we think "reversion" is more correct than "remainder"); that up until the moment of Dr. Mastin's death he had the right to dispose of, by his will, that portion of the trust assets which was not disposed of during Zemma's lifetime or by her will; that he failed to exercise this right and that interest passed to his next of kin and heirs at law, subject to be divested by the action of the trustee and/or Zemma; that the heirs and next of kin of Dr. Mastin were determined at his death, and his rights in the trust descended ultimately to Zemma and were part of her residuary estate which was disposed of in Item Twelfth of her will.

Appellants contend that Dr. Mastin made an unconditional delivery of the stocks and bonds to the trustee, expressly creating an irrevocable trust and reserving only a testamentary power of appointment; that he executed his will ten days after creating this trust, but did not exercise the power of appointment; that nothing remained in Dr. Mastin which could be passed on to his heirs or next of kin at his death; that the trustee took title to this personal property in fee simple; that title could not vest in Dr. Mastin's next of kin until six months after Zemma's death; that this trust was not merely a life estate in Zemma, but was for her benefit even after her death; and that the right to the trust assets did not come into existence until after Zemma's death and vested only then in the next of kin of Dr. Mastin.

We are inclined to agree with appellants. We have found no case exactly in point although there is an excellent annotation in 27 A.L.R.2d 692.

Here, Dr. Mastin completely gave away the securities constituting this trust and title to them was in the trustee. He reserved only a testamentary power of appointment. But even though he executed his will ten days after creating the trust, he did not mention the trust, nor did he mention it in any of the codicils to his will.

The power of appointment by will is not a property right, but a personal privilege. Warren v. Sears, 303 Mass. 578, 22 N.E.2d 406, 127 A.L.R. 595; Bienvenu v. First National Bank of Atlanta, 193 Ga. 101, 17 S.E.2d 257; 72 C.J.S. Powers § 1, p. 402; 41 Am.Jur., Powers, § 2, p. 806. When Dr. Mastin failed to exercise that power during his lifetime or by his will, it died with him and was not descendable. He could not foresee whether the corpus of the trust would have to be consumed for Zemma's care and he could not foresee whether there would be a surplus or balance in the trust. Actually, the matter of a surplus could not be determined until six months after Zemma's death, the time in which creditors could file claims, because the trust provided for the payment of her debts.

We think this surplus is due to go to Dr. Mastin's next of kin who were the next

of kin when it was definitely ascertainable that there would be a surplus, i.e., upon the termination of the trust, caused by the death of Zemma Mastin. His next of kin at that moment were his nephew, Claudius H. M. Roberts, and appellants.

We are influenced in this decision by the principle that one's property, given in trust on condition, should return to the blood line. This is "a circumstance usually considered as of some significance in the construction of wills." Bingham v. Sumner, 206 Ala. 266, 89 So. 479.

Appellees insist that we should follow Davis v. Lynchburg National Bank & Trust Co., 198 Va. 14, 92 S.E.2d 278. We think one statement in the trust in that case shows a clear distinction. Clause (E) of the trust agreement provided:

"If my daughter, upon her death, dies intestate or leaves a will wherein the power of appointment is not therein exercised, then my said trust fund estate shall cease to be impressed with a trust and shall revert to and become my estate."

This showed an unmistakable direction that the unspent portion of the trust should revert to and become his estate. In contrast, Dr. Mastin's trust agreement and his will were silent as to any direction or intention.

We cannot agree with the trial court that by Item Twelfth of Zemma Mastin's will, "she effectively exercised a testamentary power of appointment of one-half of the principal and income of the Trust given her by the terms of the Trust." The only possible reference to this trust in Item Twelfth of Zemma's will was the general residuary clause, "It is my will, and I hereby direct, that the remainder and .residue of *my* estate, real, personal and mixed shall be held by the First National Bank of Mobile, Alabama, upon the following terms: * * *." (Emphasis supplied.) This particular trust was not part of her estate and some affirmative action by her was required to make 50% of it a part of her estate, but she took no such action.

It is at least uncertain, if not speculative, as to whether this residuary clause includes the exercise of the power given her in the trust agreement as to 50% of the trust. In Cramton v. Rutledge, 157 Ala. 141, 47 So. 214, we said:

"* * * When the circumstances, as here, are so equivocal as to leave the mind in doubt whether an execution of the power was at all intended, it must be held that it was not executed. To put the proposition in the language of Mr. Story: 'For if he [the donee of the power] leaves it uncertain whether the act is done in execution of the power or not, it will not be construed to be an execution of the power.' 2 Story, Eq.Jur. § 1062; 22 Am. & Eng. Ency. Law, p. 1113, and cases cited in note 2."

The question is so uncertain here that we must hold that the general residuary clause in Zemma's will did not have the effect of executing her "power" given in this trust.

Finally, appellants argue that the balance in the trust goes to appellants and not to Dr. Mastin's surviving executor, the First National Bank of Mobile. In this, the trial court did not err. Tit. 61, § 8, Code 1940, provides: "All property not disposed of by will must be administered and distributed, as in the case of intestacy, by the executor or the administrator with the will annexed." It is undisputed that Dr. Mastin made no disposition of this property by his will. The statute requires that this property "be administered and distributed" by the executor.

In summary, we hold that the next of kin of Dr. Mastin as to this trust fund were determined after the death of Zemma Mastin and the termination of the trust; that Zemma did not dispose of any of this trust fund in her will and that the complainant

**266**

trustee should pay the balance, less fees and expenses, to Dr. Mastin's surviving executor, The First National Bank of Mobile, for distribution to those who were Dr. Mastin's next of kin after Zemma's death.

It follows that the decree of the trial court is reversed and the cause is remanded with directions to order the distribution of the trust funds as stated in this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.

