June 3, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-2286

SCOTT MARTEL,

Plaintiff, Appellant,

v.

GEORGE F. STAFFORD, ADMINISTRATOR, ETC., ET AL.

Defendants, Appellees.

ERRATA SHEET

The opinion of the Court issued on May 25, 1993 is corrected
as follows:

On page 12, footnote 10, lines 13-16 replace with the
following: under applicable Maryland law, Martel would have had
to present his claim against the estate within nine months after
the date of the decedent's death. See Md. Est. & Trusts Code

Ann. 8-103(a)(1)(1991).

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-2286

SCOTT MARTEL,

Plaintiff, Appellant,

v.

GEORGE F. STAFFORD, ADMINISTRATOR, ETC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Stahl, Circuit Judges.

Kenneth J. Chesebro, with whom Robert E. Manchester,

Patricia S. Orr, and Manchester Law Offices, P.C. were on brief,

for appellant.
Christopher S. Williams, with whom Griffin & Goulka was on

brief, for appellees.

May 25, 1993

SELYA, Circuit Judge. This appeal could do double duty
SELYA, Circuit Judge.

as a law school examination question. It follows a district

court's dismissal of the third action brought by plaintiff-

appellant Scott Martel in what has been a consistently

unsuccessful effort to stay in court long enough to recover

damages for personal injuries sustained in an automobile

accident. Because the district court lacked personal

jurisdiction over the sole defendant, a foreign executor sued as

such, we affirm.

I. BACKGROUND

Leaving to one side the seepage from the geographical

morass in which this case is mired, the prefatory facts are

straightforward. On April 18, 1985, an accident occurred on a

Vermont highway. Martel, a Vermont resident, sustained injuries

when an automobile in which he was riding collided with a vehicle

driven by Wilhelmina S. Parker. Parker, a citizen of Maryland

who was in the process of moving into a new home in Vermont,

perished two days later as an aftermath of the crash. She died

testate, owning property located exclusively in Maryland and

Vermont. Pursuant to her will, probate courts in both

jurisdictions appointed George F. Stafford, a Massachusetts

resident, as executor. Letters of administration were issued to

Stafford in Maryland on May 22, 1985 and letters testamentary

were issued to him in Vermont on August 19, 1985.

Martel seemed to be in no particular hurry to assert

his rights. It was not until April 18, 1988 that he brought

3

identical suits against Stafford in a Vermont state court and in

Vermont's federal district court. In due course, each court

dismissed Martel's complaint as time-barred on the ground that

the applicable statute of limitations pretermitted the action.

See Vt. Stat. Ann. tit. 12, 557(a) (1973) (providing that

actions against an executor for acts of the decedent are barred

if not commenced within two years of the issuance of letters

testamentary).

Undeterred, appellant went in search of a longer

statute of limitations.1 On November 22, 1988, he filed a

diversity action in the United States District Court for the

District of Massachusetts. Over two years later, Stafford moved

for summary judgment on a bouillabaisse of grounds, including

statute of limitations, res judicata, absence of personal

jurisdiction, and forum non conveniens. The district court

granted the motion on the basis of res judicata, but offered no

elaboration. This appeal ensued.2

II. ANALYSIS

While the district court invoked the doctrine of res

judicata, we are free to affirm the judgment below on any

1Appellant also appealed the superior court's entry of
judgment, but to no avail. See Martel v. Stafford, 603 A.2d 345,

346 (Vt. 1991) (affirming dismissal of Vermont action).

2During the pendency of the proceedings, Stafford died and
Marilyn S. Elias, the executrix of Stafford's estate, became a
party-defendant in this action. See Fed. R. Civ. P. 25(a)(1);

Fed. R. App. P. 43(a). Because Elias's arrival on the scene has
no bearing on the disposition of this appeal, we refer to
Stafford as if he were still alive and still the sole defendant.

4

independently sufficient ground made manifest by the record.3

See Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990);

Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859, 860-61 (1st

Cir. 1987); Chongris v. Board of Appeals, 811 F.2d 36, 37 n.1

(1st Cir.), cert. denied, 483 U.S. 1021 (1987). When, as now, a

potential jurisdictional defect rears its ugly head, an appellate

court should not hesitate to scrutinize that defect before

proceeding further. See Feinstein v. Resolution Trust Corp., 942

F.2d 34, 40 (1st Cir. 1991) (stating that "courts should

ordinarily satisfy jurisdictional concerns before addressing the

merits of a civil action"). Because jurisdiction is the most

natural and obvious starting point here, and because the district

court's rationale strikes us as problematic the general rule is

that a dismissal on limitations grounds does not bar the claim

generally, but only bars a second action in the same jurisdiction

or in a jurisdiction that would apply the same statute of

limitations, see, e.g., 18 Charles A. Wright et al., Federal

Practice & Procedure 4441, at 366 (1981) we tackle the

jurisdictional issue first.

A. Personal Jurisdiction over an Executor.

Plaintiff sued only one defendant Stafford and sued

3This option has particular utility in the summary judgment
context, as a district court's entry of summary judgment entails
plenary appellate review. See, e.g., Rivera-Muriente v. Agosto-

Alicea, 959 F.2d 349, 352 (1st Cir. 1992); Garside v. Osco Drug,

Inc., 895 F.2d 46, 48 (1st Cir. 1990).

5

him solely in his capacity as executor of Parker's estate.4

With exceptions not pertinent here, the Civil Rules provide that

the law of the forum state determines a representative party's

capacity to sue or be sued in a federal district court. See Fed.

R. Civ. P. 17(b); see also 6A Charles A. Wright et al., Federal

Practice & Procedure 1565, at 473 (2d ed. 1990). Thus,

Massachusetts law governs the determination of whether the

district court could lawfully exercise personal jurisdiction over

Stafford qua executor.

The traditional Massachusetts rule has been that an

executor or administrator appointed in another state we shall

use the generic term "foreign executor" is not subject to suit

in Massachusetts unless a statute dictates to the contrary. See,

e.g., Saporita v. Litner, 371 Mass. 607, 614 (1976); Old Colony

Trust Co. v. Clarke, 291 Mass. 17, 23 (1935); Brown v. Boston &

Me. R.R., 283 Mass. 192, 195 (1933); Borden v. Borden, 5 Mass.

67, 76-77 (1809); see also Gallup v. Gallup, 52 Mass. 445, 447

(1846) (holding that a foreign executor cannot sue in

Massachusetts); Langdon v. Potter, 11 Mass. 313, 313-14 (1814)

(same). The rule stems from the concept that a decedent's

personal representative is a creature of the state which

appointed him or her, and, as such, possesses no power to act

beyond the creator's boundaries. See Saporita, 371 Mass. at 615;

4At one point in the proceedings, plaintiff sought to amend
his complaint to name Stafford, individually, as a defendant.
The court below denied the motion. On appeal, plaintiff does not
assign error to this ruling.

6

Brown, 283 Mass. at 195; see also Derrick v. New England

Greyhound Lines, Inc., 148 F. Supp. 496, 497 (D. Mass. 1957)

(dismissing action against foreign executor on the ground that

"even if he were present and served he represents the estate only

to the extent of his Connecticut appointment, i.e., not at all,

as [the appointment] has no extraterritorial effect").

The traditional rule like most traditional rules is

not without exceptions. See Saporita, 371 Mass. at 615 (noting

that "the rule has not been rigidly applied" and surveying

certain common law exceptions). Saporita illustrates the point.

There, a Massachusetts resident sued a foreign executor to

recover payment for services rendered to the testator. The

Massachusetts Supreme Judicial Court (SJC) approved a state

court's exercise of personal jurisdiction over the executor,

primarily because the testator had a wealth of contacts with

Massachusetts. See id. at 618. Although Saporita and this case

share a certain factual resemblance in both instances, a

foreign state appointed the executor according to the terms of

the decedent's will, the foreign executor resided in

Massachusetts and was thus subject to in-hand service of process

there, and the decedent owned no real estate in Massachusetts

the two cases are more noteworthy for their dissimilarity than

for their similitude.

In Saporita, the plaintiff lived and worked in

Massachusetts. See id. at 612-13. The contract upon which she

sued had been made and performed there. See id. Moreover, the

7

testator's links with Massachusetts were pervasive; he resided

and practiced medicine there, considered Boston to be his home,

and spent approximately seventy-five percent of each week in the

Commonwealth. See id. at 611-12. In the last analysis, it was

the testator's contacts with Massachusetts that prompted the SJC

to relax the traditional rule and find personal jurisdiction over

the foreign executor. The court reasoned that, given contacts

"sufficient . . . to allow the court to exercise personal

jurisdiction over [the testator]," substituting an executor who,

although appointed in a foreign jurisdiction, had himself lived

and worked in Massachusetts and who had been served in hand

there, would "not alter the court's jurisdiction." Id. at 618.

The case before us is at a considerable remove.

Despite ample time for pretrial discovery, the record discloses

no relationship between the decedent and the forum state.5 From

aught that appears, Parker had not a single tie to

5It is apodictic that a plaintiff bears the burden of
proving facts necessary to establish jurisdiction. See Donatelli

v. National Hockey League, 893 F.2d 459, 468 (1st Cir. 1990). On

such an issue, a party faced with a motion for summary judgment
"must reliably demonstrate that specific facts sufficient to
create an authentic dispute exist." Garside, 895 F.2d at 48; see

also Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676-78 (1st Cir.

1992) (discussing standards for determining motions to dismiss
for want of personal jurisdiction that involve the court in
weighing evidence); General Contracting & Trading Co. v.

Interpole, Inc., 899 F.2d 109, 115 (1st Cir. 1990) (drawing

analogy to Fed. R. Civ. P. 56 in connection with proving disputed
jurisdictional facts). Thus, the absence of "relationship"
evidence at the summary judgment stage weighs heavily against
appellant. As we have observed before, a litigant is always
chargeable with knowledge that his "decision to sit idly by and
allow the summary judgment proponent to configure the record is
likely to prove fraught with consequence." Kelly v. United

States, 924 F.2d 355, 358 (1st Cir. 1991).

8

Massachusetts. And, moreover, the cause of action arose out of

state. Had Parker survived and Martel attempted to sue in the

Commonwealth, there is not the slightest reason to believe that a

Massachusetts court could have obtained jurisdiction over her

person. Here, then, unlike in Saporita, allowing the suit to go

forward based on the foreign executor's presence in Massachusetts

would significantly alter the jurisdictional calculus.

We have said enough. Because the Saporita exception

confers personal jurisdiction over a foreign executor only when

the testator manifests sufficient contacts with Massachusetts to

support the exercise of jurisdiction, not merely when the foreign

executor is within the physical reach of a process server,

Parker's behavioral patterns assume decretory significance.

Because she forged no links of any kind with Massachusetts in her

lifetime, her executor's Massachusetts residency cannot tilt the

jurisdictional balance. And putting Stafford's residency aside,

appellant has identified no other state-law basis for grounding

personal jurisdiction. For our part, we can envision none.6

Therefore, we must apply the traditional rule. Under it,

Stafford, like the stereotypical foreign executor, is a

nonentity, ergo, not amenable to suit beyond the boundaries of

the state(s) of his appointment. Giving force to the

6The other exceptions to the traditional rule, see Saporita,

371 Mass. at 615-17, are plainly inapposite, as are two state
statutes authorizing jurisdiction over foreign executors upon a
showing of sufficient decedent contacts with Massachusetts. See

Mass. Gen. L. ch. 90, 3A (1990); Mass. Gen. L. ch. 199A, 9
(1990).

9

Massachusetts cases and the policies behind them, we conclude

that the district court lacked personal jurisdiction over

Stafford qua foreign executor.

We add a small eschatocol. Absent some persuasive

indication that a Massachusetts court would abandon its

longstanding rule to find jurisdiction on these specific facts

an extremely dubious prospect given that the lawsuit's center of

gravity obviously lies elsewhere7 we are not at liberty to

manufacture a basis for ignoring the rule. We have repeatedly

warned that a plaintiff who, like Martel, selects a federal forum

in preference to an available state forum may not expect the

federal court to steer state law into unprecedented

configurations. See, e.g., Catrone v. Thoroughbred Racing Ass'ns

of N.A., Inc., 929 F.2d 881, 889 (1st Cir. 1991); Porter v.

Nutter, 913 F.2d 37, 41 (1st Cir. 1990); Kassel v. Gannett Co.,

875 F.2d 935, 949-50 (1st Cir. 1989). While the SJC is free to

reshape Massachusetts's judge-made law, we are not; rather, a

diversity court, with exceptions not germane to this case, must

take state law as it stands.

B. Consent (Waiver).

Appellant argues that Stafford consented to the

jurisdiction of a Massachusetts court, or, alternatively, waived

7We think it unlikely that the SJC would fashion a new
exception to an old and honored jurisdictional rule where, as
here, the plaintiff is a non-resident, the decedent had no
contacts with Massachusetts, the cause of action arose in another
place, and no discernible state interest would be served by an
assertion of jurisdiction.

10

his jurisdictional defense,8 by means of statements contained in

a brief filed in the United States District Court for the

District of Vermont. There, the defendant, in response to

plaintiff's threat to bring an action in Maryland's federal

district court, speculated that, because of Stafford's

Massachusetts residency, the proper fall-back forum would be

Massachusetts, not Maryland.

Appellant's basic premise is sound: a party may

consent to a court's in personam jurisdiction before the

commencement of an action. See, e.g., National Equipment Rental,

Ltd. v. Szukhent, 375 U.S. 311, 314-15 (1964); Pennsylvania Fire

Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 95

(1917); Holloway v. Wright & Morrissey, Inc., 739 F.2d 695, 699

(1st Cir. 1984). But, consent to personal jurisdiction cannot

be said to have occurred here. The allegedly consenting words,

buried, as they were, in a responsive argument to a speculative

threat in a prior suit before a different court and concerning a

matter unrelated to that suit's determination, dealt with a topic

wholly separate from the issue of personal jurisdiction. Taken

in context, the language to which plaintiff clings, quoted

8Because the alleged conduct occurred beyond the confines of
the present suit, the argument may be more aptly phrased as
involving "consent" rather than "waiver." We do not probe the
point, however, for the distinction is immaterial in this
situation. See General Contracting & Trading Co. v. Interpole,

Inc., 940 F.2d 20, 22-23 & n.3 (1st Cir. 1991).

11

verbatim in the margin,9 constituted no more than an assertion

that, because an executor's residence controls for venue

purposes, see, e.g., Smith v. Harris, 308 F. Supp. 527, 528 (E.D.

Wis. 1970), venue would likely lie in Massachusetts.

Notwithstanding appellant's effort to muddle the two concepts,

venue and personal jurisdiction are not the same. Pre-suit

consent to a court's jurisdiction must be far more clear and

unequivocal than a passing remark directed to another subject.

Cf., e.g., National Equipment, 375 U.S. at 314 (equating consent

with agreement to appoint an agent for service of process);

Petrowski v. Hawkeye-Security Ins. Co., 350 U.S. 495, 496 (1956)

(holding that defendant's stipulation submitting to jurisdiction

waived any right to contest in personam jurisdiction);

Pennsylvania Fire Ins., 243 U.S. at 94-95 (holding that a foreign

corporation's registration to do business within a state

constitutes consent); General Contracting & Trading Co. v.

Interpole, Inc., 940 F.2d 20, 23 (1st Cir. 1991) (ruling that a

plaintiff who purposefully avails himself of a particular forum

surrenders jurisdictional objections to claims arising out of the

same transaction that are brought against him in the same forum).

Furthermore, unlike, say, factual allegations in

trial court pleadings, statements contained in briefs submitted

by a party's attorney in one case cannot routinely be used in

9The exact words Stafford's counsel used were: "venue might
. . . be proper in the U.S. District Court for the District of
Massachusetts." Defendant's Response to Plaintiffs's Reply
Memorandum, at 9 (July 26, 1988).

12

another case as evidentiary admissions of the party. See Hardy

v. Johns-Manville Sales Corp., 851 F.2d 742, 745 (5th Cir. 1988);

cf. Fragoso v. Lopez, F.2d , (1st Cir. 1993), [No. 92-

2046, slip op. at 21] (holding that, in opposing summary

judgment, a litigant may not rest upon freestanding allegations

contained in a lawyer's brief). And although such statements may

achieve binding force in highly unusual circumstances, see

Kassel, 875 F.2d at 952 n.17 (suggesting that specific factual

statements contained in a pro se brief may be used in cross-

examining the author), we discern no such circumstances here.10

Having read the entire record with care, we find that

it reveals no word, act, or omission that may properly be

construed as consent to the jurisdiction of a Massachusetts court

or as a waiver of any available defenses in that regard. To the

contrary, defendant raised the jurisdictional objection in his

answer and by motion, and in his briefs below and on appeal.

Throughout, he made his point abundantly clear. It is a winning

10We think it is well to note that appellant has not claimed
that the venue-related allusion caused any detrimental reliance.
At any rate, such a claim would be bootless. Maryland generally
views "the question as to which period of limitations applies" as
"a matter of procedural, not substantive, law." Turner v. Yamaha

Motor Corp., U.S.A., 591 A.2d 886, 887 (Md. Ct. Spec. App. 1991).

Thus, a court sitting in Maryland would apply Maryland's statute
of limitations. By July 26, 1988 (the date when Stafford served
the brief containing the controversial comment), Maryland's
three-year statute of limitations for civil actions, see Md. Cts.

& Jud. Proc. Code Ann. 5-101 (1992), had expired. Plaintiff
has called no applicable tolling provision to our attention; and,
furthermore, under applicable Maryland law, Martel would have had
to present his claim against the estate within nine minths after
the date of the decedent's death. See Md. Est. & Trusts Code

Ann. 8-103(a)(1) (1991).

13

point, properly preserved, never abandoned, and sufficient to

carry the day.

III. CONCLUSION

We need go no further.11 As Massachusetts has never

recognized personal jurisdiction over a foreign executor on facts

akin to those presented here, the action may not proceed.

Affirmed. Costs to appellees.

11Since the jurisdictional issue is determinative, we take
no view of the intriguing choice-of-law questions that lurk in
the record or any of the other defenses Stafford advances.

14